## NEW YORK LIFE INSURANCE COMPANY v. EDWARDS, COLLECTOR.

## EDWARDS, COLLECTOR, v. NEW YORK LIFE INSURANCE COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

Nos. 712, 804.  Argued March 2, 3, 1926.—Decided April 19, 1926.

1. The proviso of the Revenue Act of 1913, § II G (b), "That . . . life insurance companies shall not include as income in any year such portion of any actual premium received from any individual policyholder as shall have been paid back or credited to such individual policyholder, or treated as an abatement of premium of such individual policyholder, within such year . . . ," does not apply to overpayments by deferred-dividend policyholders of a mutual level premium company, which though formally credited to the respective policyholders are held in the aggregate for apportionment and distribution to the survivors in good standing at the end of a prescribed period of time.  P. 115.

2. Annual additions made by a life insurance company to a fund accumulated for the amortization of the premiums paid on its investments in bonds above par, are not deductible from gross income under § II G (b), supra, as "losses actually sustained within the year."  P. 116.

3. The estimated value of the future premiums waived by a policy stipulation exempting the insured from further premiums on proof of total and permanent disability, held not deductible from gross income, under § II G (b), supra, as part of "the net addition required by law to be made within the year to reserve funds."  P. 117.

4. A special fund required by a state Superintendent of Insurance to be set aside to meet unreported losses due to death of policyholders, held not an addition to reserve funds, required by law.  P. 119.

5. The compensation which an insurance company agrees to pay soliciting agents has no relation to the reserve held to meet maturing policies; and, when it sets aside a fund to provide payments to such agents, this cannot be regarded as a reserve within intendment of the statute.  P. 119.

8 Fed. (2d) 851, reversed.

CERTIORARI to a judgment of the Circuit Court of Appeals which affirmed in part a judgment of the District Court (3 Fed. (2d) 280) allowing recovery on various items demanded by the Insurance Company in a suit against the Collector to regain alleged excessive income tax payments. Certiorari was applied for and allowed on both sides.

*Mr. James H. McIntosh* for petitioner, in No. 712 and respondent in No. 804.

*Penn Mutual Life Insurance Co.* v. *Lederer*, 252 U. S. 523, involved dividends, and dividends only. This case involves over-payments of premiums and overpayments only.

The accounting made in 1913 disclosed that the petitioner's deferred dividend policy holders over-paid it in 1912, $8,189,918. This sum the petitioner distributed among its individual deferred dividend policy holders by a mathematical calculation based on the amount of deferred dividend insurance in force, the year of issue of the several policies, the plan of the policy, and the age at issue. By this calculation was ascertained the amount of overpayment made by each individual deferred dividend policy holder on each one thousand dollars of insurance for each year of issue, on each insurance plan, and at each age at issue; and the overpayment was credited to each individual policy holder on the form in use for this purpose.

This clause is one of the few additions to the Corporate Excise Tax Act of 1909 which Congress made in passing the Revenue Act of 1913. Congress was enacting a law to tax income. The federal court had lately held and demonstrated that these over-payments were not income of the company; and, as Congress was authorized to tax income only and had no power, without apportionment, to tax something that was not income, it framed this clause to exclude from income all these over-payments of

premium. *Mutual Benefit Life Ins. Co.* v. *Herold,* 198 Fed. 199; *Herold* v. *Mutual Benefit Life Ins. Co.,* 201 Fed. 918.

No part of any premium is ever paid back, credited or treated as an abatement of the premium in the year in which the policy holder pays it. He pays the premium in one year, the accounting is taken after the end of the year, and the amount of the over-payment, if any, thereby ascertained is then paid back, credited or treated as an abatement of premium. This is necessarily true of all policies, both annual and deferred dividend policies. Hence the clause would have no meaning for any policy or for any company if it required the portion of premium to be both received and credited within the taxing year.

The credited over-payments are none the less credits because the policy holder may lose his credit by dying or lapsing his policy before the dividend date named in it. A taxing statute is strictly construed in favor of the taxpayer. Why should a credit be any less a credit because it is subject to be lost by the happening of a condition subsequent? When the amount of the over-payment is first ascertained, it is credited to each individual policy holder and will be paid with interest to each such policy holder whose insurance is in force on the date agreed upon in the policy for returning it to him, plus his proportionate share of the accumulated credits of those of his class who lost their credits by dying or lapsing their policies.

To hold that this clause applies to annual dividend policies only, and not equally to deferred dividend policies, is not merely contrary to the plain and unambiguous terms of the law, but discriminates between taxpayers of the same class, and between different groups of policy holders of the same taxpayer.

Subdivision II G (b) of the Revenue Act of 1913 authorizes the deduction from gross income of " all losses

actually sustained within the year and not compensated by insurance or otherwise." The petitioner each year amortizes its securities purchased at a premium and treats the deduction from the premium paid as an annual loss. In making its return it deducted from its gross income the total loss by amortization. The respondent claims this procedure was wrong,—that what the petitioner should have deducted was the amount of the premium paid on only those securities purchased above par that became due in the taxing year. The petitioner's method of taking this loss annually instead of taking it at the due date of the security is the method followed by all large investors.

The valuation here referred to is the yearly valuation; the loss is the yearly loss. This practice obtained and laws in harmony with it were in force in New York and many other States when Congress passed this law, and Congress is presumed to have legislated with reference to the prevailing business customs and the legal requirements imposed upon business at the time the law was passed. This question often arises in trust estates. *Matter of Stevens,* 187 N. Y. 471; *New York Life & Trust Co.* v. *Baker,* 38 A. D. 417, aff'd. 165 N. Y. 484. On securities purchased at a premium there was an intrinsic change in the value of the securities each year which was perfectly susceptible of calculation; and the aggregate sum shown by the petitioner's return was the true amount of the intrinsic change and actual loss on securities purchased at a premium. No authoritative decision has been made on this subject by the federal courts. Cf. *Fink* v. *Northwestern Mutual Life Ins. Co.,* 267 Fed. 968; *Northwestern Mutual Life Ins. Co.* v. *Fink,* 248 Fed. 568. Securities sell at a premium because they are sound and pay a high interest return. A part of the high interest return must be put aside each year to reimburse for the premium paid, that is, for the yearly

loss of the premium. But the entire interest was taxed as income. Hence, if the part of the interest used to reimburse for the yearly loss of premium is deducted, then by the deduction only that part of the interest is taxed which was in fact interest income.

As to " the net addition, if any, required by law to be made within the year to reserve funds." If Congress had intended to limit this clause to the policy reserve, we have a right to assume they would have said so. What are reserve funds as the phrase is used in this law and in the business of insurance? Already the Court has answered this question. *Maryland Casualty Co.* v. *United States,* 251 U. S. 342. When is a reserve fund required by law? When it is required directly by statute, or by a public official who has authority to require it.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom *Solicitor General Mitchell* was on the brief, for respondent in No. 712 and petitioner in No. 804.

The over-payments of premiums made by deferred dividend policy holders in 1912, ascertained in 1913, and added to the amount held for future distribution, were not deductible from plaintiff's 1913 income, because the amount thereof was neither paid back or credited to the individual policy holders who made them, nor treated as an abatement of premium of such individual policy holders in 1913.

The Revenue Act of 1913 does not permit the deduction from plaintiff's gross income for 1913 of the sum representing amortization of securities purchased at a premium.

Sums representing liability arising (a) because of waived premiums under special benefit disability contracts, (b) from unreported loss claims, and (c) upon pension contracts with agents, are not reserves within the meaning of the Revenue Act of 1913.

9542°—26—8

See *Fink* v. *Northwestern L. Ins. Co.*, 267 Fed. 968; *Lumber Mut. L. Ins. Co.* v. *Malley*, 256 Fed. 383; *Mutual Benefit L. Ins. Co.* v. *Herold*, 198 Fed. 199, aff'd. 201 Fed. 918; *McCoach* v. *Ins. Co. of North America*, 244 U. S. 585; *Maryland Casualty Co.* v. *United States* 251 U. S. 342; *N. Y. Life Ins. Co.* v. *Anderson*, 263 Fed. 527; *Penn Mut. Ins. Co.* v. *Lederer*, 252 U. S. 523; *United States* v. *Boston Ins. Co.*, 269 U. S. 197; *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

The Insurance Company brought suit in the District Court at New York to recover of Edwards, Collector, the alleged excessive sum demanded of it as income tax for the year 1913, and obtained judgment for a part. 3 Fed. (2d) 280. The Circuit Court of Appeals affirmed this except as to one item. 8 Fed. (2d) 851. Both parties are here by certiorari, and five questions require consideration. All involve the construction or application of the Revenue Act of October 3, 1913, c. 16, 38 Stat. 114, 172. Section II G (a) imposed an annual tax of one per centum upon the net income of " every insurance company organized in the United States," and (b) directed—
: " Such net income shall be ascertained by deducting from the gross amount of the income of such . . . insurance company, received within the year from all sources, (first) all the ordinary and necessary expenses paid within the year in the maintenance and operation of its business and properties, including rentals or other payments required to be made as a condition to the continued use or possession of property; (second) all losses actually sustained within the year and not compensated by insurance or otherwise, including a reasonable allowance for depreciation by use, wear and tear of property, if any; . . . and in case of insurance companies the net

addition, if any, required by law to be made within the year to reserve funds and the sums other than dividends paid within the year on policy and annuity contracts: *Provided,* That . . . life insurance companies shall not include as income in any year such portion of any actual premium received from any individual policyholder as shall have been paid back or credited to such individual policyholder, or treated as an abatement of premium of such individual policyholder, within such year. . . ."

1. The Company, a New York corporation without capital stock, does business on the mutual, level premium plan and issues both "annual dividend" and "deferred dividend" policies. Under this plan each policyholder pays annually in advance a fixed sum which, when added to like payments by others, probably will create a fund larger than necessary to meet all maturing policies and estimated expenses. At the end of each year the actual insurance costs and expenses incurred are ascertained. The difference between their sum and the total of advance payments and other income, then becomes the "overpayment" or surplus fund for immediate *pro rata* distribution among policyholders as dividends or for such future disposition as the contracts provide. An "annual dividend" policyholder receives his proportionate part of this fund each year in cash or as a credit upon or abatement of his next premium. "Deferred dividend" or, as sometimes called, "distribution" policies provide—

"That no dividend or surplus shall be allowed or paid upon this policy, unless the insured shall survive until completion of its distribution period, and unless this policy shall then be in force. That surplus or profits derived from such policies on the distribution policy plan as shall not be in force at the date of the completion of their respective distribution periods, shall be apportioned among such policies as shall complete the distribution periods."

Accordingly, all overpayments by deferred dividend policyholders must await apportionment until the prescribed period ends; and no one of them will receive anything therefrom if his policy lapses or if he dies before that time. The whole of this fund goes to the survivors.

Overpayments by deferred dividend policyholders for 1912 amounted to $8,198,918. The Collector refused to deduct this sum from the total receipts, and demanded the prescribed tax of one per centum thereon. We think he acted properly. Both courts below so held.

The applicable doctrine was much considered in *Penn Mutual Life Insurance Co.* v. *Lederer,* 252 U. S. 523. We there pointed out the probable reason for the permitted non-inclusion in the net income of a life insurance company of " such portion of any actual premium received from any individual policyholder as shall have been paid back or credited to such individual policyholder, or treated as an abatement of premium of such individual policyholder, within such year." Here it is insisted that within the meaning of the quoted provision each deferred dividend policyholder's overpayment was actually credited to him during the year; but we cannot accept this theory. The aggregate of all such payments was held for distribution among policyholders alive at the end of the period. The receipts for the year were not really diminished.

2. The Company owned many bonds, etc., payable at future dates, purchased at prices above their par values, and to amortize these premiums a fund was set up. It claimed that an addition to this fund should be deducted from gross receipts. The District Court thought the claim well founded, but the Circuit Court of Appeals took another view. Unless the addition amounted to a loss " actually sustained within the year " no deduction could be made therefor. Obviously, no actual ascertainable loss had occurred. All of the securities might have been sold thereafter above cost. The result of the venture could not be known until they were either sold or paid off.

3. In 1910 the Company introduced a clause into some policies by which it agreed to waive payment of premiums after proof of total and permanent disability. The estimated value on December 31, 1913, of future premiums so waived amounted to $16,629. It claimed this should be added to the reserve fund and deducted from gross income. Insurance companies may deduct " the net addition, if any, required by law to be made' within the year to reserve funds."

The pertinent portion of the agreed statement of facts follows—

" In 1910 the plaintiff introduced into some of its contracts of life insurance a clause under which it agreed that upon receipt, before default in the payment of premium, of due proof that the insured had become totally and permanently disabled, the plaintiff would waive payment of any premium thereafter falling due. In taking its account at the end of the calendar year 1913, the plaintiff had then received due proof that the insured under a number of these policies were totally and permanently disabled in accordance with the terms of said contracts providing for the waiver of the payment of future premiums. The value at December 31, 1913, of the future premiums waived on account of total and permanent disability was the sum of $16,629. The value at December 31, 1912, of the future premiums so waived was the sum of $5,637.

" In the calculation of the general reserve fund at the end of any calendar year, the Company and the Insurance Department of the State of New York make the computation by deducting from the value of the contractual benefits under each policy the then value of all future premiums under the policy. The general reserve fund of the plaintiff stated in its Annual Statement is thus the reserve computed by deducting the value of all future premiums

from the valuation of all policy obligations. But, under the policies on the lives of those who had become totally and permanently disabled and whose contracts provided for the waiver of the payment of future premiums, no future premiums will be received by the plaintiff and therefore, the net reserve reported for these policies is understated to the extent of the value of these future premiums.

" In the official blank for the plaintiff's Annual Statement to be used at December 31, 1913, there was an item of liabilities, #9-$a$ entitled, ' Present Value of Future Premiums Waived on Account of Total and Permanent Disability,' and in the plaintiff's Annual Statement the sum reported under this item was $16,629 at December 31, 1913. The sum of $16,629 reported under Item #9-$a$ was not included in the plaintiff's general reserve. In the official blank for use at December 31, 1912, there was no such item as #9-$a$, and the plaintiff included the value at December 31, 1912, of future premiums waived on account of total and permanent disability (viz: $5,637) as a part of the general reserve at that date.

" If said sum of $5,637 had not been included as a part of the general reserve at December 31, 1912, the net addition to the value of future premiums waived on account of total and permanent disability would have been the excess of $16,629 over $5,637. Since, however, owing to the change in the form of the official blank, the said $5,637 was deducted as a part of the plaintiff's general reserve in obtaining the net addition to the general reserve, the sum to use in obtaining the net addition to the value of future premiums waived on account of total and permanent disability is the sum of $16,629."

The Circuit Court of Appeals held the deduction should have been allowed, but we think otherwise.

The Superintendent of Insurance of New York required this item to be reported as a liability and did not treat

it as part of the general reserve.   Upon the agreed facts we cannot say that it was part of any reserve required by the laws of New York.   There is nothing to show how "the value of the contractual benefits" under these policies was arrived at and, considering the evidence presented, we must accept the Superintendent's conclusion.   The Company has not shown enough to establish its right to the exemption.

4. A number of policyholders died during the calendar year, but their deaths were not reported before it terminated.   The Superintendent of Insurance required the Company to set aside a special fund to meet these unreported losses, and it claimed that this was an addition to the reserve fund required by law.   We think this claim was properly rejected by the Commissioner, although the courts below held otherwise.   *McCoach* v. *Insurance Co. of North America,* 244 U. S. 585, and *United States* v. *Boston Insurance Co.,* 269 U. S. 197, pointed out that "the net addition, if any, required by law to be made within the year to reserve funds," does not necessarily include whatever a state official may so designate; that "reserve funds" has a technical meaning.   It is unnecessary now to amplify what was there said.   The item under consideration represented a liability and not something reserved from premiums to meet policy obligations at maturity.

5. The Company also claimed deduction for additions to a fund set aside to provide for payment of annuities to former soliciting agents as provided by their contracts of employment.   The Commissioner properly rejected this item, although both courts below held a different view. The agreed statement of facts shows—

"The plaintiff has a form of contract of employment with many of its soliciting agents under which, if such agents for a period of twenty years continuously devote their entire time, talents and energies in soliciting appli-

cations for insurance, and if they shall for the twenty years accomplish certain prescribed minimum results, then at the end of twenty years of such service each such agent becomes entitled to an income for life payable monthly, the amount of the payment being based upon the results obtained by each such agent during the twenty year period. The laws of New York require the Superintendent of Insurance, in making a valuation of the obligations of the plaintiff, to value annuities on the standard of McClintock's 'Table of Mortality among Annuitants,' with interest not exceeding four per centum per annum. Said Superintendent of Insurance after making an examination of the plaintiff and valuing its liabilities, required the plaintiff to carry, and it does carry, a fund to meet its said liabilities on said contracts with its soliciting agents; and this fund it increased during the year 1913. The net addition to said fund for said year was the sum of $160,-641, which the plaintiff, in making its said return deducted from gross income, under that clause of the law which authorizes a life insurance corporation to deduct the net addition required by law to be made within the year to reserve funds. But in amending said return the Commissioner refused to allow said deduction, and thereby made the plaintiff's net income for the year appear to be $160,641 more than it would have been if said deduction had been allowed, and he assessed and collected an additional tax on account thereof accordingly in the sum of $1,606.41, which forms a part of the tax in controversy in this suit."

As pointed out above, the term "reserve funds," in the taxing Act, has a technical meaning. The compensation which an insurance company agrees to pay soliciting agents has no relation to the reserve held to meet maturing policies; and when it sets aside a fund to provide payments to such agents this cannot be regarded as a reserve within intendment of the statute.

The judgment below must be reversed.    The cause will
be remanded to the District Court for further proceedings
in harmony with this opinion.

*Reversed.*