ANTOINETTE P. ALTMAYER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CLAIRE A. POLLOCK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7122, 7123. Promulgated February 29, 1928.

*George E. H. Goodner, Esq.*, for the petitioners.
*J. E. Marshall, Esq.*, for the respondent.

## OPINION.

LITTLETON: The facts are not in dispute. The bondholders' committee deemed it advisable to reduce the obligor company's indebtedness in order that interest payments might be made when due, and enable the obligor to continue in business. Early in 1922 the petitioners joined the other bondholders of the Meridian Light & Railway Co. in accepting the proposal. Pursuant to the plan adopted for execution of the proposed action, petitioners deposited their bonds with the designated depository, which was authorized to and did effect the cancellation. Thereafter, the bondholders were entitled to principal and interest only on the remaining 70 per cent face value of their bonds.

Our question is whether a loss was sustained by the petitioners in 1922 when this cancellation became effective, and, if a loss, the basis for determining the amount thereof. The statutory authority for the deduction claimed is section 214 (a) (5) of the Revenue Act of 1921, which reads:

(a) That in computing net income there shall be allowed as deductions:

(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *

The provision of the statute applicable as a basis for computing the loss here in question is section 202 (a) (3), which reads:

(a) That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property; except that—

(3) In the case of such property, acquired by bequest, devise, or inheritance, the basis shall be the fair market price or value of such property at the time of such acquisition. The provisions of this paragraph shall apply to the acquisition of such property interests as are specified in subdivision (c) or (e) of section 402.

In the first place does the evidence show that a deductible loss was sustained when the cancellation became effective. The petitioners contend, and we think properly so, that the owning and holding of these bonds was a transaction entered into for profit. *Robert W. Williams; Executor*, 1 B. T. A. 1101. Under ordinary circumstances, therefore, a gain would be realized or loss sustained only when the

property is sold or otherwise disposed of. *New York Life Ins. Co.* v. *Edwards*, 271 U. S. 109; *Corn Exchange Bank*, 6 B. T. A. 158. Such taxable gain or deductible loss under the statute would be the difference between the fair market value in 1914 when acquired and the amount received on sale or other disposition of this property. Section 202 (a) (3), *supra*. The fact that bonds may be purchased at a premium or a discount and, therefore, the amount which would be realized at maturity would be greater or less than the cost or fair market value at date of acquisition, does not alter the fact that gain or loss is computed on the difference between cost or fair market value at date of acquisition and amount received on sale or other disposition. *Corn Exchange Bank*, *supra*. That is, the gain or loss on a bond is computed in the same manner as the gain or loss on any other property and the face value or amount due at maturity is not necessarily determinative of the cost or selling price.

When, therefore, a part of the face value of a bond is canceled, has the holder of the bond sustained a deductible loss proportionate to the amount canceled or in any other determinable amount? A careful consideration of the question brings us to the conclusion that this question must be answered in the negative. While it is, no doubt, true that when the prospective amount which the petitioners would realize at maturity and the amount upon which interest would be paid were reduced, material factors entering into the value of the bonds were unfavorably affected. These, however, are not the only factors which determine the value of a bond. An investor is not only interested in the return which he is to receive but also in the security back of the bond. For this reason bonds of the same par value and bearing the same interest rate sell at widely varying prices. It can not be said that, because some of the factors which enter into the value of a bond have been adversely affected, the entire value of the bond has been proportionately and permanently decreased. The petitioners' theory is that because 30 per cent of the face value of a bond has been canceled, 30 per cent of the cost of a bond has been lost. We fail to see where this is a measure of the loss or proof that a loss has been sustained. After the cancellation bonds which cost $525 had a face value of $700 and bonds which cost $825 had a face value of $700. Under the petitioners' theory, it would be immaterial what the market price of the bonds was after the cancellation or what might be realized in an ultimate sale. For aught we know, the financial position of the corporation which issued these bonds may have been so improved that the bonds had greater, instead of less, value than at the date of acquisition in 1914, or that the security back of these bonds was no greater in 1914 than after the cancellation became effective. The respondent's action in denying any loss on

account of the cancellation of a part of the face value of these bonds is, accordingly, sustained.

The further point raised by the petitioners that the assessment of $10 on each bond should be allowed as a deduction from gross income must also be denied. These amounts were paid in furtherance of a plan to protect the investment which the petitioners had in these bonds, and the benefit to be derived therefrom is not confined to the year in which the expenditures were made. Such items are not deductible as ordinary and necessary expenses of the year when made, but should be treated as an additional investment in these bonds. *Harry E. Lutz*, 2 B. T. A. 484; *John G. Paxton*, 7 B. T. A. 92.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

MILLIKEN, dissenting: The bondholders' committee deemed it advisable to reduce the obligor company's indebtedness, in order that interest payments might be made when due and enable the obligor to continue in business. Early in 1922, the petitioners joined the other bondholders of the Meridian Light & Railway in accepting the proposal. Pursuant to the plan adopted for execution of the proposed action, petitioners deposited their bonds with the designated depository, which was authorized to and did effect the cancellation. Thereafter, the bondholders were entitled to principal and interest on only the remaining 70 per cent face value of their bonds.

The cancellation agreement between the bondholders and the debtor company was nothing more or less, to my mind, than a composition agreement by which the bondholders or creditors agreed to forever give up a part of their claim against the debtor to increase the probability of recovering the remainder of the debt. In the case of the *Pacific Novelty Co.* v. *Commissioner*, 5 B. T. A. 1017, we held that a debt reduction under a composition agreement was a deductible loss in the year in which the agreement was entered into and became binding. I am of the opinion that the decision rendered is controlling in the case at bar.

The respondent contended that the facts herein constitute an exchange of property for property of a like kind, within the meaning of section 202 (c) (1) of the Revenue Act of 1921, and, therefore, any loss sustained on the transaction may not be recognized for income tax purposes.

The loss of 30 per cent of the face value of the bonds occurred when the bonds were deposited for cancellation and petitioners became bound by the terms of the agreement with their committee. By becoming a party to the agreement and depositing their property, they gave up 30 per cent of its face value and secured nothing in its stead. The loss preceded the exchange, if such there was, and I am

of the opinion that the statutory authority for the deduction claimed finds a basis pursuant to the provisions of section 214(a)(5) of the Revenue Act of 1921, which provides as follows:

SEC. 214. (a) That in computing net income there shall be allowed as deductions:

\* .\* \* \* \* \* \*

(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business; \* '\* \*.

But what is the measure of the deduction allowable? It seems to me the basis to be used by petitioners for income-tax purposes is fixed by section 202(a)(3) at the fair. market value of the bonds when inherited. The fair market value of each bond, at that time, was $525 for those with coupons clipped and $825 in the case of the bonds with coupons attached. I agree with the majority opinion concerning the $10 assessment. Thus the basis of the bonds in the hands of petitioners was $525 for the bonds with coupons clipped and $835 for those with coupons attached. Petitioners urged that the deduction allowable is measured by 30 per cent of such basis. The fallacy in such contention is evident. If so measured, 30 per cent of $535, or $160.50, would be allowable as a deduction on the bonds with coupons clipped, yet the bondholders had hopes of recovering the $700, which remained as the face value after the cancellation was made. Thus the possible total capital recovery, under the petitioner's contention, would be $700 plus $160.50, or $860.50 on a bond having a basis for income-tax purposes of only $535. Manifestly, there is an allowable deduction only to the extent that the basis exceeds the debt remaining. As the debt remaining is greater than the basis, in the bonds with coupons clipped, no deduction is allowable on account of the 30 per cent cancellation on these bonds. The basis or investment in each bond with coupons attached being $835, and the debt remaining being but $700, I am of the opinion that the difference between those amounts or $135, on each bond of that class, is an allowable deduction. When the facts in this case are considered, the question of fair market value of the bonds after partial cancellation gives me no trouble.