**LUCAS, Collector of Internal Revenue, v. ALEXANDER.**

Circuit Court of Appeals, Sixth Circuit.
June 30, 1928.

Nos. 4973, 4974.

1. **Internal revenue ⬥7(9)—Payment of endowment policy to insured held taxable (Revenue Act 1918, §§ 202, 213 [Comp. St. §§ 6336⅛bb, 6336⅛ff]).**

Payment on endowment policy, made in lifetime of insured to himself, and which was a combination of life insurance and investment, resulted in a profit to insured, taxable under Revenue Act 1918, §§ 202, 213 (Comp. St. §§ 6336⅛bb, 6336⅛ff).

2. **Internal revenue ⬥7(17)—Deduction for income tax from proceeds of endowment life policies at maturity held determinable by market value of policies on March 1, 1913, and not by surrender value; "market price" Revenue Act 1918, §§ 202(a), (1), 213(b), (2); Comp. St. §§ 6336⅛bb(a), (1), 6336⅛ff(b), (2).**

Where plaintiff in 1899 took out two 10-payment 20 year endowment policies, payable at the end of 20 years, with accumulations at his option if he were then living or at his earlier death in the face amount if death occurred before the end of 10 years and in gradually increasing amounts if death occurred during the second 10 years and at the end of the term in 1919 he received payment of the face of the policies, with accumulated dividends, held, that deduction for income tax purposes provided by Revenue Act 1918, § 213(b), (2), Comp. St. § 6336⅛ff(b), (2), was the market value of the policies on March 1, 1913, which was the discounted value of the amount in all probability payable on policies at maturity, and was not limited to the surrender value thereof, since that was not "market price," within Revenue Act 1918, § 202(a), (1), Comp. St. § 6336⅛bb (a), (1); Treasury Regulation 45, art. 72b, being inapplicable.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Market Price.]

In Error and Cross-Error to the District Court of the United States for the Western District of Kentucky; Charles I. Dawson, Judge.

Action by A. J. A. Alexander against Robert H. Lucas, Collector of Internal Revenue for the District of Kentucky. To review the judgment (21 F.[2d] 68), defendant brings error, and plaintiff assigns cross-error. Judgment affirmed.

Elwood Hamilton, of Louisville, Ky. (Beckham, Hamilton & Beckham, of Louisville, Ky., on the brief), for plaintiff.

Edward H. Horton, Sp. Atty., Bureau of Internal Revenue of Washington, D. C. (Thos. J. Sparks, U. S. Atty., of Greenville, Ky., A. W. Gregg, Gen. Counsel Bureau of Internal Revenue, of Washington, D. C., on the brief), for defendant.

Before DENISON, MACK, and MOORMAN, Circuit Judges.

MACK, Circuit Judge. Error and cross-error from a judgment for plaintiff in the sum of $6,519.36, with interest, part of an additional assessment collected from him as income tax for the year 1919.

The New York Life Insurance Company, a mutual company, issued to plaintiff, then aged 24, two policies, effective May 19, 1899, in the aggregate face amount of $100,000 called "insurance bond, with guaranteed interest." The annual premium was $7,810. In case of death within the first 10 years, only the face amount $100,000 was to be paid; if death occurred within the second 10 years, the amount payable would be, in excess of $100,000, a guaranteed sum, increasing year by year, and reaching a maximum of $144,300 in the twentieth year. In case of death during the year which included March 1, 1913—that is, the year ending May 19, 1913—$114,000 would thus have been payable. If the insured was alive at the end of the twentieth year—that is, on May 19, 1919—the face of the policy became payable, and in addition thereto a cash dividend then to be apportioned by the company. Certain optional rights were given at the end of the twentieth year, but they are not important for the purposes of this case. The policy was payable to the estate of the insured; he had the right to change the beneficiary.

The guaranteed loan or cash surrender value, which began in the third year, amounted to $79,400, in the year ending May 19, 1913. In order fairly to determine the dividend apportionable at the end of 20 years, the company kept a record, called "Funds provisionally ascertained and held awaiting apportionment," for each policy. This provisional fund increased yearly; to it were allocated the dividends that would otherwise have been paid annually, with the interest earned thereon, and the pro rata share of the similarly provisionally accumulated dividends of those policy holders in the same class who died before the end of the 20-year period. On March 1, 1913, the company had thus provisionally set aside on its books $13,600 for plaintiff's policies. As of that day, its accountants would have estimated

that on the assumption of surplus increase during the ensuing 6 years at the same rate as during the past 14 years, the dividend payable to plaintiff if alive on May 19, 1919, would be $19,428.57. The actual course of events was that the rate of increase of the surplus was accelerated during the next 6 years, so that the amount actually paid to plaintiff in 1919 was $20,797, in addition to the $100,000 face amount of the policies.

Of the amount plaintiff received, he reported $17,238.35 as income for the year 1919, claiming that the remaining $103,560.-65 represented the March 1, 1913, value of his policy. The Commissioner of Internal Revenue, reauditing his return, found the taxable gain to have been $42,697, the difference between the amount received, $120,-797, and the amount paid out in premiums during the 20 years, $78,100. Value as of March 1, 1913, was disregarded. Pursuant to demand, plaintiff paid an additional assessment of $8,750.91 and brought this action for its return.

The District Court found the taxable gain $27,209.19 over the March 1, 1913, valuation of $93,587.81, on this reasoning: As plaintiff on March 1, 1913, was normally healthy and 38 years old, the chances of his living out the full 20 years and then receiving $119,-428.57 in the policies were very good. Discounting that sum at the rate of 4 per cent. annually for the 6 years, 2 months, and 19 days, gave $93,587.81, the value on March 1, 1913, as found by the court.

The applicable statutory provisions are sections 202 and 213 of the Revenue Act of 1918, 40 Stat. 1060, 1065, as follows:

"Sec. 202. (a) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—

"(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date. * * *" Comp. St. § 6336⅛bb.

"Sec. 213. That for the purpose of this title (except as otherwise provided in section 233) the term 'gross income'—

"(a) Includes gains, profits, and income derived from * * * sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period; but

"(b) Does not include the following items, which shall be exempt from taxation under this title:

"(1) The proceeds of life insurance policies paid upon the death of the insured to individual beneficiaries or to the estate of the insured;

"(2) The amount received by the insured as a return of premium or premiums paid by him under life insurance, endowment, or annuity contracts, either during the term or at the maturity of the term mentioned in the contract or upon surrender of the contract. * * *" Comp. St. § 6336⅛ff.

Regulations 45 (1920 Edition) provide in article 72b: "During his life only so much of the amount received by an insured under life, endowment, or annuity contracts as represents a return, without interest, of premiums paid by him therefor is excluded from his gross income."

It is contended by plaintiff that the proceeds of life insurance policies are not constitutionally taxable as income, but that, if they are, then the correct method of determining the taxable gain in the present case is to subtract from the amount received a sum equal to the face of the policy plus the dividends which had been provisionally determined by March 1, 1913. Defendant contends that the policies are taxable, at the difference between the amount received and either the amount of premiums paid or the cash surrender value on March 1, 1913.

[1] Plaintiff contends that the proceeds of life insurance policies do not constitute income within the Sixteenth Amendment. In United States v. Supplee-Biddle Hardware Co., 265 U. S. 189, 44 S. Ct. 546, 68 L. Ed. 970, the Supreme Court expressly refrained from deciding whether life insurance paid on the *death* of a corporate officer could constitutionally be taxed as income to the corporation which had insured him. The instant policy is an endowment; payment thereof was made in the lifetime of Alexander, to himself. The policy, like all endowment policies, was a combination of life insurance and investment. When paid, there inured a clear profit to the insured, a profit that is as much income, within the constitutional amendment, as any profit gained in a business transaction. The provisions of the 1918 act above quoted are clearly broad enough to include gains

from insurance transactions other than the two specific exemptions.

The second question is as to the applicability of Treasury Regulation 45, article 72b, under which the Commissioner proceeded. Attempts to support it on the ground of settled administrative practice must fail, not only because the government relies for proof of the continuity of the practice upon later regulations promulgated after the assessment in dispute and under different statutes, but also because the regulation is contrary to law in so far as it attempts to regulate income tax on proceeds of insurance policies having a fair market price or value on March 1, 1913. The act which it interprets says that to ascertain gain from the disposition of property, the excess over the March 1, 1913, fair market price or value of that property should be taken. An insurance policy is of course property within the statute. Its value as property is not necessarily equal to its cost; it may as well be more or less.

[2] We come, then, to the question of the March 1, 1913, value of the policies. Defendant contends for surrender value, on the ground that the only way the insured could have realized on his policies in 1913 was by surrendering them. Plaintiff contends for the then value to the insured because of the lack of a market price, due to their non-assignability to a stranger. That value, plaintiff further contends, was $113,600, the face of the policies plus $13,600 of surplus then provisionally credited to him on the company's books, since it was reasonably certain that plaintiff would get at least that sum. He argues that the probability of further additions to surplus during the time plaintiff had to wait for the money neutralized the six years' postponement of enjoyment, so that no discounting was necessary to find present value.

The only reported litigation involving the valuation of an insurance policy for federal income tax purposes which has been found is Appeal of Kline, 3 B. T. A. 1138. There, the taxpayer held a policy of the New York Life Insurance Company, in the amount of $10,000, issued in 1902 and fully paid up in 1912 by ten annual premiums of $965.20, on which policy no dividends or other distribution was to be made until 1922, when the insured exercised the option to receive $14,-830.10 in cash. The surrender value March 1, 1913, was $9,070. The Commissioner based the tax for 1922 upon the difference between the surrender value on March 1, 1913, and the total paid in 1922. He was sustained by the Board of Tax Appeals.

However, the sole ground of the taxpayer's appeal was that the amount of premiums paid should have been subtracted rather than the surrender value. A method similar to that employed by the District Judge in the present case was not urged, and would have been still more unfavorable to the taxpayer.

Kentucky Tobacco Products Co. v. Lucas (D. C.) 5 F.(2d) 723, involved the valuation as of March 1, 1913, for the purpose of measuring depreciation under the income tax, of a contract right to make future purchases of raw materials at highly advantageous prices. The method of valuation employed was to find how much profit would be received by the taxpayer under the contract during the years it had to run, and then to take the present value in 1913 of this amount by discounting on a 5 per cent. interest basis.

Plaintiff's situation on March 1, 1913, was as follows: If he lived until 1919, he could reasonably expect then to realize about $120,-000 on the policies. The present value of that sum we may take as $93,587.81, since the details of the trial judge's calculations are unimpeached. The amount payable to the estate in case of death between March 1, 1913, and May 19, 1919, would have ranged from a minimum of $114,000 to a maximum of $144,000.

It follows, therefore, if the policy had been salable, its market value on March 1, 1913, would clearly have been no less than $93,587.81, the then discounted value of the amount in all probability payable at maturity, inasmuch as the purchaser would have had an excellent investment, with the chance of a very heavy increase in case the insured died before maturity.

If an assignable policy were worth this amount in the market, then the nonassignable policy was worth the same amount to the insured.

It is true that plaintiff could have realized only $79,400 from the policies by surrendering them. But he was under no obligation to make this less advantageous disposition of his property. The statement in In re Newland, 18 Fed. Cas. 92, No. 10,171, approved in Hiscock v. Mertens, 205 U. S. 202, 212, 27 S. Ct. 488, 51 L. Ed. 771, that the present value of an insurance policy is its surrender value, was a dictum with reference to valuation for bankruptcy purposes. It involves wholly different considerations. The loan or surrender value of plaintiff's policies was not a "market price." Moreover, section 202 does not make market price the sole criterion; it permits deduction of fair mar-

ket price or *value,* and since the latter phrase is set in opposition to the former value to the owner may be taken as the alternative to market price.

Plaintiff Alexander's assignments of error in No. 4974 are without merit. The attempt is made, by reasoning not entirely clear, to take the face of the policy plus the provisionally apportioned dividends as the value in 1913. If the theory of this is that plaintiff was sure to get at least that amount in 1919, there is the obvious objection that plaintiff has lost sight of the fact that a future-accruing sum must be discounted to find its present value. If, on the other hand, plaintiff's theory is that the provisionally credited dividends in 1913 represented in part the intrinsic value of the policy, this runs counter to New York Life Insurance Co. v. Edwards, 271 U. S. 109, 46 S. Ct. 436, 70 L. Ed. 859, affirming 8 F.(2d) 851, which made clear that holders of policies such as the one here in question have absolutely no interest in such dividends until the maturities of their policies.

Judgment affirmed.