### EWING–THOMAS CONVERTING CO. v. McCAUGHN, Collector of Internal Revenue.

District Court, E. D. Pennsylvania. October 5, 1928.

No. 11868.

Geary & Rankin and Hinkson, Ledward & Hinkson, all of Chester, Pa., for plaintiff.

C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and E. O. Hanson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., and George W. Coles, U. S. Atty., of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge. This is an action at law to recover $24,338.97, alleged to have been erroneously collected from the plaintiff as income taxes for the year 1919. The taxpayer took an appeal to the United States Board of Tax Appeals from a deficiency in tax proposed to be assessed against it by the Commissioner of Internal Revenue. The United States Board of Tax Appeals held the proposed action of the Commissioner was lawful, and the tax was thereupon assessed and collected. Thereafter the plaintiff instituted this suit, which was tried before the court; jury having been waived by written stipulation.

## Findings of Fact.

(1) The taxpayer is a Pennsylvania corporation, with its principal office at Chester, Pa. It is engaged in the business of mercerizing cotton yarn. It buys from Southern spinners cotton yarn in the warped form, known in the trade as natural or gray yarns. It mercerizes this yarn and then winds it, placing it on cones, and sells its output to the knitting trade for use in making stockings.

(2) It was the regular and constant practice of the taxpayer during the year 1919, and for many months prior thereto, in every case of the sale of yarn, if it did not have sufficient yarn on hand to fill the order sold, immediately to cover the contract by purchasing natural yarn necessary to take care of the sale.

(3) Between September 25, 1918, and May 25, 1919, the taxpayer in the ordinary course of its business entered into a number of contracts for the sale of mercerized yarn to one Clarence L. Meyers, of Philadelphia, Pa., all of which yarn should have been delivered to Meyers in the ordinary course of business by the middle of 1919. Deliveries were not made, however, in accordance with the understanding of both parties, and some of the yarn owed Meyers was not delivered until after December 31, 1919.

(4) The taxpayer accepted orders from and sold mercerized yarn to many persons besides Clarence L. Meyers, of Philadelphia. Its transactions with Meyers during 1919 were from 10 to 15 per cent. of its entire transactions.

(5) During the period from February, 1919, to April, 1920, prices of cotton yarn, both natural and mercerized, advanced very greatly. Certain kinds of yarn doubled and trebled in price during the period.

(6) Some of the natural yarn which had been purchased against the Meyers contracts was used in filling orders received from others than Meyers at later dates.

(7) On December 31, 1919, the close of the taxpayer's taxable year, the taxpayer was under binding contracts to sell Clarence L. Meyers 53,198 pounds of mercerized yarn at prices much under the then market prices. On that date the taxpayer had on hand approximately 40,000 pounds of yarn, of a quality and grade suitable for filling the Meyers contracts. None of this yarn was, however, specifically set aside for the filling of those contracts, and the taxpayer was free to do with it as he wished. The taxpayer's inventory at the close of 1919 was taken upon the basis of cost. Inasmuch, however, as the taxpayer was obligated to sell to Meyers 53,198 pounds of mercerized yarn at less than the then market prices and at less than the cost of the approximately 40,000 pounds of yarn on hand available for filling the contracts, the inventory of all yarn on hand at December 31, 1919, was written down to the extent of $53,198, which amount represents the estimated loss which the taxpayer was of the opinion that it had sustained upon the Meyers contracts.

(8) To take care of its estimated loss of $53,198, the taxpayer opened a special account known as the "C. L. Meyers Special Account," and charged off this estimated amount as a loss, and made a counter entry in its profit and loss ledger. The income tax return form for 1919 did not contain any provision for the entry of such an item as a deduction, and the taxpayer accordingly reported its inventory as reduced by $53,198.

(9) The Meyers contracts were completed by deliveries commencing January 2, 1920, and ending on May 20, 1920. Most, but not all, of the 40,000 pounds of yarn on hand on December 31, 1919, suitable for filling the Meyers contracts, was used in the making of these deliveries; some natural yarn was purchased after December 31, 1919, and used in making the deliveries.

(10) The Commissioner has added to the taxpayer's net income reported for 1919 the $53,198 in question, and has proposed the assessment of an additional tax of $28,242.66 for said year.

Note.—The above findings were introduced as evidence as the facts found by the United States Board of Tax Appeals. This court also so finds. To the above may be added the following, based on testimony produced at the trial:

(11) During the year 1919 deliveries of raw products to the plaintiff were delayed from 60 to 90 days. The amount of raw

products upon hand remained about constant during the year 1919. The manufacture of the products produced by the plaintiff required approximately 30 days from the receipt of the raw material. Neither the plaintiff's contracts with Meyers nor its contracts for the purchase by it of natural yarn were subject to cancellation. There was no agreement between the plaintiff and Meyers, extending the time for deliveries under the contracts. During 1919 Meyers was continually calling on the plaintiff for more prompt deliveries, but never suggested to the plaintiff that he would bring suit by reason of its default, or that he would hold it liable therefor. All yarn necessary to fill the Meyers contract was purchased by the plaintiff during the year 1919.

### Discussion and Conclusion.

At the close of the year 1919, the plaintiff found itself under binding contracts, entered into during that year, for the sale of its product at a price less than the cost of manufacture and less than the market price of similar merchandise at the close of the year. It conceived (and it now so contends) that in making its income tax return it was entitled to take as a deduction a sum equal to the loss which it estimated it would sustain by the performance of such contracts. It proceeded to do so by subtracting from the values shown by its inventory, taken at the end of 1919, at cost, the amount of such estimated loss. This resulted in the entire inventory being at a figure below either cost or market value. I am of the opinion that the taxpayer did not have the right to take its estimated loss in the contracts in question as a deduction for the year 1919, nor was the method by which it endeavored to effectuate its claim authorized by law.

The Revenue Act of 1918 (40 Stat. 1067) authorizes the deduction of "losses sustained during the taxable year. * * *" Article 141 of Regulations 45 (issued in connection with the Revenue Act of 1918) provided that losses claimed during any taxable year "must usually be evidenced by closed and completed transactions." Most business losses result from transactions covering a period of time of appreciable extent. It is obvious that, in order to determine in what year a loss has accrued, so as to be deductible, some fixed point in the transaction producing the loss must be taken, and it is desirable that a general rule applicable to all cases must be established. The rule established by the Regulations is reasonable, and

in accordance with the purposes and intent of the act. The plaintiff's position is practically that the time of accrual, for purposes of a deduction, is the time when it becomes reasonably certain that the loss will be incurred. I say reasonably certain, because in a transaction of this kind there can be no absolute certainty, and, while the plaintiff in his argument refers to absolute certainty, he does not really mean so much. It is a matter of ordinary knowledge that it sometimes occurs that for various reasons parties may be relieved of improvident or unprofitable contracts, or more favorable terms granted, or contracts apparently binding nullified on legal grounds. The safe and certain rule is that laid down by the Regulations. This conclusion is supported by the current of judicial authority. New York Life Insurance Co. v. Edwards, 271 U. S. 109, 46 S. Ct. 436, 70 L. Ed. 859; U. S. v. White Dental Co., 274 U. S. 398, 47 S. Ct. 598, 71 L. Ed. 1120; Lewellyn v. Electric Reduction Co., 275 U. S. 243, 48 S. Ct. 63, 72 L. Ed. 262.

In Brewer v. Orr (C. C. A.) 19 F.(2d) 230, the court said: "It is, we think, indisputable that losses occurring in trade or business, which are deductible as such in computing net income, are only such losses as have been realized." This has also been the consistent holding of the Board of Tax Appeals in numerous cases. It may or may not be true that a statement for banking or credit purposes, which did not take into account the probability of the loss, would be an incorrect statement; but that question is beside the point, because for credit purposes the important point is the probability of a loss accruing, and it is unimportant exactly when it occurs. For tax purposes the exact time when it occurs is an important consideration.

As to the taxpayer's right to reduce his inventory by the estimated loss, this question to a large extent is bound up with that just discussed; but it should be said that the taxpayer's procedure in this case was not authorized by law. If articles 1582 and 1584 of Regulations 45 be carefully read, it will be seen that market value can be used as a basis for valuation only when it is lower than cost. Otherwise cost must be used. It follows that the provision of article 1584 for a valuation lower than market under certain abnormal conditions is only available to the taxpayer when the market is lower than the cost. Even if it were available when the cost was the lower of the two values, it would not apply here, because there is no evidence that the taxpayer had regularly sold such mer-

chandise as is herein involved at prices lower than the current bid price.

Judgment may be entered for the defendant.