*1088 OPINION.
Marquette :
The petitioner alleges and the respondent denies that assessment and collection of the additional tax herein are barred by *1089 the statute of limitations. The petitioner did not specifically abandon this issue at the hearing, but it introduced no evidence in support of its claim. On the record we must hold that assessment and collection are not barred.
The next contention of the petitioner is that the general mortgage bonds of the Black Mountain Corporation became worthless in 1921, and that the petitioner should be allowed a deduction on account thereof in the amount of $400,000 as a loss sustained in that year, and that in any event it should be allowed a deduction of $350,000 representing that portion of the bonds determined to be uncollectible and charged off during the taxable year.
It appears that the petitioner in its return for 1921 claimed a deduction of $350,000 as a loss on the bonds in question. It now claims that it is entitled to a deduction either as a loss or as a debt ascertained to be worthless and partially charged off in the taxable year.
We find no error in the respondent’s determination that the petitioner is not entitled to any deduction on account of these bonds. The evidence does not, in our opinion, establish a loss sustained in 1921. The Black Mountain Corporation was not in liquidation, but was a going concern, and has continued operations up to the present time. The petitioner made no attempt to sell the bonds and although the value of the assets underlying them may have diminished, that does not establish a deductible loss under the statute. This Board held in W. P. Davis, 6 B. T. A. 1267, that:
Until it is clearly shown that stock owned in a corporation which is still in existence and has assets is in fact worthless and there is no probability that any portion of the investment will ever be recovered, no deductible loss under the statute has been sustained. The term “ losses sustained ” conveys the idea of a final termination of a transaction in connection with which the investment was made and the loss claimed.
The same conclusion was reached in E. O. Walgren, 4 B. T. A. 1066; Corn Exchange Bank, 6 B. T. A. 158; New York Life Insurance Co. v. Edwards, 271 U. S. 109; News Publishing Co., 6 B. T. A. 1257. These cases are applicable and decisive in the present instance,
Nor do we see any reason for allowing as a deduction in 1921 the cost to the petitioner, or any part, of the bonds as a debt ascertained to be worthless in that year. Assuming for the purpose of this opinion that bonds may be charged off and deducted as worthless debts, the evidence does not show, in our opinion, that the bonds in question were in 1921 the proper subject of a charge-off and a deduction. They do not mature until 1930. The Black Mountain Corporation is a going concern owning many thousands of acres of coal land and other assets. It appears to be true that if the corporation had liquidated in 1921 and disposed of its assets at the *1090 then prevailing market price, it would not have realized sufficient money therefrom to discharge its obligation on the first and second mortgage bonds, and the petitioner would have received nothing on its third mortgage bonds. But it does not follow that the depressed condition of the market for coal and coal lands would continue indefinitely, or that by the time the bonds matured the corporation would not have sufficient assets to pay them. We do not consider that in 1921 the bonds were worthless- in whole or in part within the meaning of the Revenue Act of 1921, and the petitioner’s claim is denied.
The next question is whether the respondent erred in adding to the petitioner’s income for 1921 the amount of the net additions in that year to the reserves for labor trouble and accident liability. The eAddence shows that the petitioner sold coal to the Commonwealth Edison Co. and the Chicago, Rock Island & Pacific Railway Co. on a cost-plus basis. Under the contracts the cost to the petitioner was to include amounts that it might be required to pay on account of labor trouble and accident liability in connection with the coal furnished. In order to meet this possible liability the petitioner collected from the buyers each month a certain amount per ton on all coal shipped to them and the amounts so collected were set aside in separate funds. Whenever a payment was made for accident claims or on account of labor trouble it was made from the particular fund kept for that purpose and not from the general funds of the petitioner. While the funds were kept separate and apart from the general funds of the petitioner, the amounts collected but unexpended in each month were transferred to the petitioner’s general books and a corresponding credit was made to reserves for labor trouble and accident liability. However, no part of the amounts collected by the petitioner from the buyers to cover labor trouble and accident liability belonged to the petitioner until a liability attached on account of labor trouble or accident and then the funds became subject to the petitioner’s use in an amount sufficient to discharge the liability and to that extent they became income to the petitioner. But any unexpended balance remaining in either fund did not belong to the petitioner and was not income and could not become income until the petitioner was required to use the fund for the purpose for which it had been collected. We are, therefore, of the opinion that these unexpended balances neither should be included in gross income nor added to the reserves and deducted in computing net income. As shown by the findings of fact, the net addition to the fund for labor trouble was $25,591.97 in respect to the Commonwealth Edison Co. and $4,061.07 in respect to the Chicago, Rock Island & Pacific Railway Co. The net addition to the fund for accident liability Avas $52,673.63 in respect to the Common *1091 wealth Edison Co. and $7,348.62 in respect to the Chicago, Rock Island & Pacific Railway Co. These amounts will be excluded in computing the petitioner’s income for 1921.
The next question involves the propriety of the respondent’s action in including in the petitioner’s income for 1921 the balance remaining in the reserves set up by the petitioner under its contracts with the Peoples Gas Light & Coke Co. and the Central Illinois Public Service Co. Tinder these contracts certain amounts were collected to cover the possible cost of administrative expenses and the petitioner’s income and profits-tax liability for the years 1918 and 1919. The amounts were collected and the reserves set up during the year 1918. The contracts expired in 1919 and part of the balance remaining in the funds and in the reserves was returned to the purchaser in that year. No other change was made in the reserves during the years 1919, 1920, and 1921. In 1922 the respondent finally determined the petitioner’s income and profits-tax liability for the years 1916 to 1920, inclusive. The petitioner accepted the Commissioner’s determination and in March, 1922, the balances in the reserve accounts in question were transferred to the petitioner’s income-tax account. In our opinion the action of the respondent can not be sustained. The unexpended balances in the reserves were either income to the petitioner in 1919, Avhen the contracts with the Peoples Gas Light & Coke Co. and the Central Illinois Public Service Co. expired, or they were income in 1922 when the liabilities for which the reserves were maintained were determined and paid, but they were not income in 1921.
We are also of the opinion that the respondent erred in including in the petitioner’s income for 1921 the amounts remaining in the reserve for subsidence and the reserve for excessive freight. These reserves were set up by the petitioner in the years 1919 and 1920 and no change was made in them in the year 1921. If they were not reserves of the kind that are recognized as proper deductions from income by the several revenue acts, they should have been restored to the petitioner’s income in the years in which they were made. If they are reserves the net additions to which are allowable as deductions from income, then the unexpended balances became income to the petitioner in the year in which the reason for which they were created ceased to exist, which was in 1922. The amount of the reserves in question should be eliminated from the petitioner’s income for 1921.
Reviewed by the Board.

Judgment will be entered under Rule SO.