HOME FRIENDLY INSURANCE COMPANY OF MARYLAND, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32090.    Promulgated February 5, 1931.

*Daniel B. Chambers, Esq.*, and *Benjamin Chambers, Esq.*, for the petitioner.

*W. F. Gibbs, Esq.*, and *O. W. Swecker, Esq.*, for the respondent.

88

OPINION.

BLACK: On the hearing of this proceeding the respondent confessed error in not allowing as deductions $4,505.47 excise tax paid by the petitioner on insurance premiums received during 1920, and in not excluding from gross income the sum of $1,296 dividends paid back or credited to policyholders within the taxable years. The former should be allowed as a deduction and the latter excluded from gross income.

It was further confessed at the hearing that petitioner should be allowed a deduction of $75,639.92, being the amount added to its legal reserve during the taxable year, instead of $55,478.82 as allowed by respondent in computing the deficiency.

The two remaining errors urged by petitioner are (1) and (4) and really involve only one issue, viz., whether premium receipts of a mutual life insurance company received during a taxable year should be included as a part of its gross income, or whether the

excess of such premiums, after the deduction of expenses, legal reserve and claims paid out during the year, are capital contributions on the part of the members who are the only shareholders of the company. We will take up assignment of error (4) first, for if such premium receipts are a part of petitioner's gross income and the remainder, after the deduction of allowable deductions, is a part of petitioner's net income, then manifestly the excess of such premiums does not become a part of petitioner's invested capital within the taxable year and petitioner's assignment of error (1) must fail.

Section 326 (a) (3) of the Revenue Act of 1918, which is the act governing the instant case, reads:

(a) That as used in this title the term "invested capital" for any year means, except as provided in subdivisions (b) and (c) of this section:

\*      \*      \*      \*      \*      \*      \*

(3) Paid-in or earned surplus and undivided profits; *not including surplus and undivided profits earned during the year.* (Italics ours.)

Manifestly, if the premium receipts of petitioner in the taxable year are a part of its gross income under the Revenue Act of 1918, and the excess, after subtracting the deductions allowed by statute, is a part of its net income, then such excess could not become a part of petitioner's paid-in or earned surplus during the taxable year and is not a part of petitioner's invested capital for that year.

Conversely, if these premium receipts are not a part of petitioner's gross income and the excess of such premium receipts, after deduction of statutory deductions, is not income, then petitioner's assignment of error (4) must be sustained, and that carries with it the sustaining of assignment (1). In discussing the issue involved, it should be borne in mind that the taxable year involved is governed by the Revenue Act of 1918, and under that act no separate classification between insurance corporations and other corporations is made. And mutual life insurance corporations are not exempted from its provisions. The Revenue Act of 1918 contains the following provision:

SEC. 233. (a) That in the case of a corporation subject to the tax imposed by section 230 the term "gross income" means the gross income as defined in section 213, except that:

(1) In the case of life insurance companies there shall not be included in gross income such portion of any actual premium received from any individual policyholder as is paid back or credited to or treated as an abatement of premium of such policyholder within the taxable year.

As has already been stated elsewhere in this opinion, the Commissioner did include in gross income $1,296 of premiums which had been paid back or credited to policyholders within the taxable year. He has confessed error in that respect and that issue is no longer before us.

Deductions allowed:

Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

(Here follows enumeration of the deductions allowed corporations in general, including, of course, insurance corporations.)

(10) In the case of insurance companies, in addition to the above:

(a) The net addition required by law to be made within the taxable year to reserve funds (including in the case of assessment insurance companies the actual deposit of sums with State or Territorial officers pursuant to law as additions to guarantee or reserve funds) ; and (b) the sums other than dividends paid within the taxable year on policy and annuity contracts.

It appears that in computing the deficiency and in errors confessed at the hearing, respondent concedes to petitioner all the deductions permitted by the above section.

Net income defined:

Sec. 232. That in the case of a corporation subject to the tax imposed by section 230 the term "net income" means the gross income as defined in section 233 less the deductions allowed by section 234, and the net income shall be computed on the same basis as is provided in subdivision (b) of section 212 or in section 226.

It seems to us, taking into consideration the errors confessed at the hearing, respondent proposes to compute petitioner's net income for the taxable year in accordance with law. We find no support either in the statute or the decisions of the courts for the proposition that the premium receipts of a mutual life insurance company such as petitioner are not gross income under the Revenue Act of 1918. We think *New York Life Ins. Co.* v. *Edwards*, 271 U. S. 109, is decisive of the question here involved. It is true that case arose under the Revenue Act of 1913, but an examination of that act will disclose that its provisions for computing net income of an insurance company are practically identical with those of the Revenue Act of 1918. In *New York Life Ins. Co.* v. *Edwards, supra*, the Court said:

The company, a New York corporation without capital stock, does business on the mutual level premium plan and issues both "annual dividend" and "deferred dividend" policies. Under this plan each policyholder pays annually in advance a fixed sum which, when added to like payments by others, probably will create a fund larger than necessary to meet all the maturing policies and estimated expenses. At the end of each year the actual insurance costs and expenses incurred are ascertained. The difference between their sum and the total of advance payments and other income, then becomes the "overpayment" of surplus fund for immediate pro rata distribution among policyholders as dividends or for such future disposition as the contracts provide. An "annual dividend" policyholder receives his proportionate part of this fund each year in cash or as a credit upon or abatement of his next premium. "Deferred dividend," or, as sometimes called, "distribution," policies provide—

"That no dividend or surplus shall be allowed or paid upon the policy, unless the insured shall survive until completion of its distribution period, and unless

this policy shall then be in force. That surplus or profits derived from such policies on the distribution policy plan as shall not be in force at the date of the completion of their respective distribution periods, shall be apportioned among such policies as shall complete the distribution periods."

Accordingly all overpayments by deferred dividend policyholders must await apportionment until the prescribed period ends, and no one of them will receive anything therefrom if his policy lapses or if he dies before that time. The whole of this fund goes to the survivors.

Overpayments by deferred dividend policyholders for 1912 amounted to $8,189,918. The collector refused to deduct this sum from the total receipts, and demanded the prescribed tax of 1 per centum thereon. We think he acted properly. Both courts below so held.

See also *Penn Mutual Life Insurance Co.* v. *Lederer*, 252 U. S. 523; *Northwestern Life Insurance Co.*, 10 B. T. A. 676.

The petitioner urges in support of its contention *Duffy* v. *Mutual Benefit Life Ins. Co.*, 272 U. S. 613; *Atlantic Life Insurance Co.* v. *Moncure*, 35 Fed. (2d) 360, but we think neither of these cases is authority for the proposition that petitioner's premium receipts during the taxable year are not to be included in its gross income and that in determining its net income it is entitled to anything more than the statutory deductions. These cases are authority for the proposition that in determining excess-profits tax mutual life insurance corporations are entitled to include as invested capital their reserves accumulated in prior years, both legal and contingent, which have been paid in by their members (shareholders). In this proceeding there is no issue on that point. Respondent has conceded that both petitioner's legal and contingent reserves on hand at the beginning of 1920 should be included in its invested capital and by stipulation both parties have agreed what this invested capital at the beginning of 1920 should be. Since we hold that petitioner's premium receipts for the taxable year are a part of its gross income and not capital investment, petitioner's assignments of error (1) and (4) must be overruled.

The contention which petitioner makes, to the effect that premiums received by a life insurance company should not be included in its gross income, was embodied in the Revenue Bill of 1918 as it passed the the Senate. (See Report of the Senate Finance Committee, accompanying H. R. 12863.) This method of computing the income of an insurance company, as proposed by the Senate, was not accepted by the House of Representatives, and the Revenue Act of 1918 made no separate classification of insurance corporations for purposes of taxation. It was not until the Revenue Act of 1921 that such separate classification was made.

It seems clear that under the Revenue Act of 1918 all premium receipts of a life insurance company, except that part which is paid back or credited to, or treated as an abatement of premium of the

policyholder, are a part of its gross income. The excess of gross income over deductions permitted by the statute is what constitutes net income. *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*