CORN EXCHANGE BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7067.  Promulgated February 18, 1927.

> Petitioner purchased bonds and securities of other corporations for resale and as investments.  Through the use of recognized tables prepared for the purpose of determining the annual amortization of the discounts or premium on such bonds, petitioner determined the annual amount which, over the period between the date of purchase and the date of maturity, would amortize the difference between the purchase price and the face value of the bonds held.  In the case of bonds purchased at a discount income was increased and in the case of bonds purchased at a premium loss was taken each year, and this increase in income or loss was reflected upon the books and in the income-tax returns filed for each year.  *Held*, that the amounts by which such bonds were written up or down in each year did not represent accrued income or a loss sustained within the year and it may not therefore be said that such method of accounting clearly reflected income.

*Spotswood D. Bowers, Esq.*, for the petitioner.
*Thos. P. Dudley, Jr., Esq.*, for the respondent.

The Commissioner determined a deficiency in income and profits tax in the amount of $25,951.65 for the year 1921.  Only that portion of the deficiency arising from the elimination by the Commissioner of certain adjustments made by petitioner in its income accounts for the amortization of premiums and discounts on bonds of other corporations purchased by it is in dispute.

FINDINGS OF FACT.

Petitioner is a banking corporation organized about 1852 under the laws of the State of New York with principal office in New York.  For many years it has followed the practice of investing large amounts in bonds of other corporations.  In 1914 petitioner

adopted a practice as a part of its bookkeeping system, which has always been maintained upon the accrual basis, of amortizing the discount or premium on bonds purchased by it. Through the use of tables, prepared for that purpose, petitioner determined at the end of each interest period the amount which, over the period between the date of purchase of a bond and its maturity, would amortize the difference between the purchase price and the face value of the bond. In the case of bonds purchased at a discount petitioner wrote up the accounts for such bonds in the amount so determined and credited a corresponding amount to income for the year. Conversely, in the case of bonds purchased at a premium, the bond accounts were written down at each interest period and income correspondingly decreased. These credits to and charges against income for the current year's amortization were reflected in petitioner's interest account as additions or subtractions from the amount of interest received or accrued upon the books. As a result, the books showed the cost of the various bonds as adjusted for discounts or premiums previously amortized. When bonds were sold before maturity, as was the case in many instances, or redeemed at maturity, the basis adopted by the petitioner in computing the gain or loss in the year of sale was not the actual cost but the cost as adjusted in the manner indicated. Usually when bonds had been purchased, at a discount and written up, and were sold before maturity for an amount less than book value, the difference between the sales price and the book value represented the loss claimed, as disclosed by entries appearing upon petitioner's books of account relating to certain Western Maryland R. R. Co. 4 per cent Gold Bonds due October 1, 1952:

| Acquired. | Sold. | Par value. | Cost. | Amortization added to book value and to income. | | Adjusted book value. | Sales price. | Gain or loss. |
|---|---|---|---|---|---|---|---|---|
| | | | | Date. | Amount. | | | |
| 1915 | | $100,000 | $84,620 | 1915 | $95.00 | $84,715.00 | | |
| | | | | 1916 | 132.70 | 84,847.70 | | |
| | | | | 1917 | 159.50 | 85,007.20 | | |
| | | | | 1918 | 167.30 | 85,174.50 | | |
| | | | | 1919 | 175.70 | 85,350.20 | | |
| | | | | 1920 | 184.40 | 85,534.60 | | |
| | 1920 | 5,000 | 4,231 | | | 4,276.73 | $2,980.00 | $1,296.73 L |
| | | 95,000 | 80,389 | | | 81,257.87 | | |
| | | | | | 90.80 | 81,348.69 | | |
| | 1921 | 95,000 | 80,389 | | 1,005.42 | 81,348.69 | 51,813.75 | 29,534.94 L |

Petitioner's accounting method relating to bonds purchased at a premium as disclosed by a transcript of its account relating to

certain Genessee Railroad Co. 6 per cent Gold Bonds due July, 1957, was as follows:

| Acquired. | Sold. | Par value. | Cost. | Amortization deducted from book value and from income. | | Adjusted book value. | Sales price. | Gain or loss. |
|---|---|---|---|---|---|---|---|---|
| | | | | Date. | Amount. | | | |
| 1915_____ | | $46,000 | $49,910.00 | 1915 | $7.36 | $49,902.64 | | |
| 1917_____ | | 54,000 | 58,551.07 | 1916 | 25.80 | 49,876.84 | | |
| | | | | | | 108,427.91 | | |
| | | 100,000 | 108,461.07 | 1917 | 59.01 | 108,368.90 | | |
| | | | | 1918 | 62.32 | 108,306.58 | | |
| | | | | 1919 | 65.80 | 108,240.78 | | |
| | | | | 1920 | 69.46 | 108,171.32 | | |
| | 1921__ | 99,000 | 107,376.46 | 1921 | 36.18 | 1 8,135.14 | | |
| | | | | | | 107,053.79 | $78,271.50 | $28,782.29L |
| Balance Jan. 1, 1922_____ | | 1,000 | 1,084.61 | | 325.93 | 1,081.35 | | |

Petitioner's treatment of bonds purchased at a premium and not sold before maturity, as disclosed by a transcript of its account relating to certain New York, Lackawanna & Western R. R. 6 per cent gold bonds due January 1, 1921, follows:

| Acquired. | Par value. | Cost. | Amortization deducted from book value and from income. | | Adjusted book value. | Sales price. | Gain or loss. |
|---|---|---|---|---|---|---|---|
| | | | Date. | Amount. | | | |
| 1915_____ | $22,000 | $23,677.50 | 1915 | $133.32 | $23,544.18 | | |
| | | | 1916 | 282.45 | 23,261.73 | | |
| | | | 1917 | 295.06 | 22,966.67 | | |
| | | | 1918 | 308.24 | 22,658.43 | | |
| | | | 1919 | 322.02 | 22,336.41 | | |
| | | | 1920 | 336.41 | 22,000.00 | | |
| Redeemed, 1921_____ | 22,000 | | | 1,677.50 | 22,000.00 | | |

In his determination the Commissioner eliminated entirely all adjustments for amortization of premium or discount, the effect of which was twofold; first, he eliminated the amortization taken for the current year and thereby decreased the income as reported by petitioner in the amount of $12,312.82, and, secondly, he employed as his basis for computing the gain or loss on sales the actual cost of the bonds without regard to the amount of discount or premium previously amortized, charged or credited to the bond account, as the case may be, thereby decreasing the losses on sales as claimed by petitioner in the amount of $34,261.01.

OPINION.

LITTLETON: There is no dispute as to the facts or the figures. Petitioner claims that it is entitled under the provisions of subsection (b) of section 212 of the Revenue Act of 1921 to have its

net income computed in accordance with the method of accounting regularly employed in keeping its books and that its income for any year from bonds held by it must be increased or decreased as the case may be in the amount of the amortization of the discount or premium at which such bonds were purchased; that in allowing the gain or loss from the sale of such bonds the basis to be employed is the cost as increased or decreased by amortization of the discount or premium previously entered upon the books.

The Commissioner takes the position that the method employed by the petitioner in determining its income and losses on bonds owned by it does not clearly reflect its income and is not in accordance with the tests of the statute for the determination of income losses.

In *New York Life Insurance Co.* v. *Edwards*, 271 U. S. 109, the court said:

The Company owned many bonds, etc., payable at future dates, purchased at prices above their par values, and to amortize these premiums a fund was set up. It claimed that an addition to this fund should be deducted from gross receipts. The District Court thought the claim well founded, but the Circuit Court of Appeals took another view. Unless the addition amounted to a loss "actually sustained within the year" no deduction could be made therefor. Obviously, no actual ascertainable loss had occurred. All of the securities might have been sold thereafter above cost. The result of the venture could not be known until they were either sold or paid off.

The petitioner undertakes to distinguish the decision of the court in *New York Life Insurance Co.* v. *Edwards, supra,* from this proceeding upon the ground that returns of income under the Revenue Act of 1913, which was involved in the case cited, were required to be made on the basis of cash received and disbursed, whereas the petitioner's return for the year 1921 was made upon the accrual basis. We think, however, that no accrual can be predicated on the premium or discount at which a bond is purchased before the bond is sold or redeemed. Before sale or redemption of a bond nothing occurs to fix the amount which the holder thereof will actually realize from it (eliminating from consideration the matter of interest which is not in dispute here). The discount on the bond purchased below par is unlike interest, which is a fixed charge and accrues periodically. The right to receive this discount, or difference between the cost of the bond and its par, can not be determined in advance as the bond may be sold for more or less than its cost, or, perhaps, as in the case of many bonds, it may be redeemed prior to its maturity at an amount different from its principal or face amount of the bond. This discount is not earned or accrued in annual installments and can not be income to the holder of the bond, either as additional interest or as a separate item of income. If anything, the annual amortization of this discount represents merely a theoretical appre-

ciation in value unrealized by a sale or other disposition of the bond. It does not even represent actual appreciation as the current market price for the bond may be above or below the cost thereof as adjusted for previous amortization of the discount.

The amount by which the petitioner has annually written up its bonds and correspondingly increased income on account of the amortization of discount thereon can not represent income received or accrued to the petitioner under the definition of income as laid down by the courts in many cases. The converse is true in respect to the amortization of premium on bonds bought above par. The interest received from such bonds is not, in fact, diminished by annual charges made for the purpose of amortizing this premium. The fact that the petitioner may consider a part of this interest as set aside annually for the purpose of amortizing the premium does not diminish the actual interest received or accrued on the bonds. Nor does the setting aside of an annual amount for this purpose constitute a realized loss on the bonds as the court has pointed out in *New York Life Insurance Co.* v. *Edwards, supra.*

The same consideration governs in determining the proper basis to be employed in computing gain or loss on the sale of the bonds under the 1921 Act as under the 1913 Act. The basis prescribed by the statute for computing gain or loss is cost. (The March 1, 1913, value is not involved in this proceeding.) This basis can not be changed because of any supposed appreciation or diminution in value not previously allowed. Unlike depreciation, the annual amortization of premium or discount on securities of other corporations held for investment is not an allowable adjustment to income, nor an allowable adjustment to the basis for computing gain or loss on sale. See *Appeal of Even Realty Co.*, 1 B. T. A. 355.

The petitioner insists that because it has adhered to a certain method of keeping its accounts over a number of years, its income must be computed solely in accordance with that method of accounting. Bookkeeping entries are significant only as evidence or records of transactions and the legal effect of such transactions and the method employed in keeping the books must be determined from the transactions themselves, and not merely from the book entries affecting them. See *Appeal of Chatham & Phenix National Bank*, 1 B. T. A. 460. Moreover, section 212 (b) of the Revenue Act of 1921, upon which the petitioner relies in support of this contention, provides that a taxpayer's method of accounting shall be followed only if such method clearly reflects income. The effect of this section is to permit a taxpayer to adopt any recognized or logical method of accounting, but requires that the method so adopted clearly reflect income. See *Appeal of Owen-Ames-Kimball Co.*, 5 B. T. A. 921. A method of accounting which reflects purely theoretical increases

or decreases in income not realized, as we believe the method contended for by petitioner does, can not correctly reflect income as contemplated by the statute. Section 212 does not contemplate that such a method of accounting shall itself be conclusive as to the true income of a taxpayer.

It is also contended by the petitioner that the net result of its method of accounting is the same as that used by the Commissioner when considered over a period of years; in other words, that it reports the same gain or loss on bonds, which the Commissioner contends is realized only upon the sale or retirement of the bonds, but that it reports this amount in annual installments. We think it is not enough however that a particular method of accounting be correct only when its effect over a period of years is considered. The income and profits tax is levied with respect to annual periods and each such period stands by itself. The statute requires that the income for each year be correctly determined and the tax imposed thereon. The erroneous computation of income for some prior years or subsequent years does not justify an erroneous computation of income for the year under consideration. *Appeal of MacMillan Co.*, 4 B. T. A. 251.

*Judgment will be entered for the respondent.*