CARDING GILL LIMITED, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 90406.   Promulgated September 29, 1938.

*David A. Buckley, Jr., Esq.*, and *Harvey L. Rabbitt, Esq.*, for the
petitioner.

*F. S. Gettle, Esq.*, for the respondent.

OPINION.

OPPER: The three issues in this proceeding, while interrelated, may be stated separately: First, whether petitioner, being a foreign corporation, is subject to tax upon its income from the sale of securities in the United States; second, whether it is entitled to deductions for amortization of bond discount more than equal to any income from sources within the United States; and, third, whether it is subject to the 25 percent additional tax for delinquency in the filing of its return.

On the first question, petitioner urges that section 119 (a) of the Revenue Act of 1928[1] does not have the effect of including within petitioner's taxable income profits from securities admittedly sold by it in the United States during the taxable years. In this contention it seems to us petitioner overlooks the provisions of section 119 (e), which reads in part as follows:

> (e) *Income from sources partly within and partly without United States.*— Items of gross income, expenses, losses and deductions, other than those specified in subsections (a) and (c) of this section, shall be allocated or apportioned to sources within or without the United States, under rules and regula-

---

[1] SEC. 119. INCOME FROM SOURCES WITHIN UNITED STATES.

(a) *Gross income from sources in United States.*—The following items of gross income shall be treated as income from sources within the United States:

(1) INTEREST.—Interest on bonds, notes, or other interest-bearing obligations of residents, corporate or otherwise, not including—

(A) interest on deposits with persons carrying on the banking business paid to persons not engaged in business within the United States and not having an office or place of business therein, or

(B) interest received from a resident alien individual, a resident foreign corporation, or a domestic corporation, when it is shown to the satisfaction of the Commissioner that less than 20 per centum of the gross income of such resident payor or domestic corporation has been derived from sources within the United States, as determined under the provisions of this section, for the three-year period ending with the close of the taxable year of such payor preceding the payment of such interest, or for such part of such period as may be applicable, or

(C) income derived by a foreign central bank of issue from bankers' acceptances;

(2) DIVIDENDS.—The amount received as dividends—

(A) from a domestic corporation other than a corporation entitled to the benefits of section 251, and other than a corporation less than 20 per centum of whose gross income is shown to the satisfaction of the Commissioner to have been derived from sources within the United States, as determined under the provisions of this section, for the three-year period ending with the close of the taxable year of such corporation preceding the declaration of such dividends (or for such part of such period as the corporation has been in existence), or

(B) from a foreign corporation unless less than 50 centum of the gross income of such foreign corporation for the three-year period ending with the close of its taxable year preceding the declaration of such dividends (or for such part of such period as the corporation has been in existence) was derived from sources within the United States as determined under the provisions of this section;

(3) PERSONAL SERVICES.—Compensation for labor or personal services performed in the United States;

(4) RENTALS AND ROYALTIES.—Rentals or royalties from property located in the United States or from any interest in such property, including rentals or royalties for the use of or for the privilege of using in the United States, patents, copyrights, secret processes and formulas, good will, trade-marks, trade brands, franchises, and other like property; and

(5) SALE OF REAL PROPERTY.—Gains, profits, and income from the sale of real property located in the United States.

tions prescribed by the Commissioner with the approval of the Secretary. * * * Gains, profits and income derived from the purchase of personal property within and its sale without the United States or from the purchase of personal property without and its sale within the United States, shall be treated as derived entirely from sources within the country in which sold * * *.

It is true the statute contains no express reference to personal property both purchased and sold within the United States. Gains therefrom, however, are obviously items of gross income, and are consequently to be treated, under specific legislative direction, by regulation. *Hubert de Stuers*, 26 B. T. A. 201, 205. Cf. *Suffolk Co., Ltd.*, 37 B. T. A. 1156. The applicable provision of Regulations 74 [2] makes the place of sale the test; and it is conceded on petitioner's brief that the securities involved were sold in the United States. In any event, the place of purchase is not specified and the stipulation includes the profit from security sales among the items of petitioner's "income from sources within the United States", a phrasing which we must regard as including such evidentiary facts as may be requisite to bring it within that description. It may be that this question is not properly before us on the pleadings, since petitioner returned the profit from sales as gross income for each year and neither in the petition nor at the hearing was the point specifically raised; but for the reasons stated we conclude that petitioner can not in any event be sustained on this branch of its claim.

The deduction for amortization of bond discount is sought on the ground that petitioner issued its bonds for a consideration worth less than their face value. Unless this be the fact, petitioner can not succeed, and of it there is no proof. Nothing appears in the stipulation except petitioner's arbitrary valuation of the property received, and no evidence was introduced apart from the stipulation. Petitioner contends that we may presume an obligation to be worth par in the absence of contrary evidence, citing *Fruen Investment Co.*, 2 B. T. A. 542; *Claude H. Birdsall*, 2 B. T. A. 1169; and *Southern Railway Co.*, 27 B. T. A 673. Even if we do so, and without attempting to decide the point, the case is not improved. In only one instance is the par value given, and then it is in terms of pounds sterling. The "principal amount" of debentures received in that instance is stated to be £720,000. If we convert this at the rate of $4.86 (the transaction took place in 1927) the result is $3,499,200, a figure greatly in excess of the $2,025,000 claimed by petitioner. But that is not all. Petitioner received in addition 1,400 "ordinary shares" of a par value of £1 each. And certainly there is no presumption that shares of stock are worth only par. *Lincoln Cotton Mills*, 15 B. T. A 680, 695; *Premier Packing Co.*, 12 B. T. A. 637, 645. The

---

[2] ART. 678. *Sale of personal property.*—Income derived from the purchase and sale of personal property shall be treated as derived entirely from the country in which sold * * *.

case thus rests exclusively on petitioner's claim unsupported by any evidence whatsoever, and this will not suffice. *Kansas City Southern Railway Co.*, 22 B. T. A. 949, 964. Petitioner has not sustained a burden of proof of which its counsel was well aware, and the result of which was specifically indicated at the hearing.

A similar disposition is required with respect to the third question. Imposition of the delinquency tax for failure to file a return within the time prescribed by law is mandatory unless "it is shown that the failure to file it was due to reasonable cause and not due to willful neglect." [3] No cause whatsoever nor any attendant circumstances are in evidence. The sole reference in the stipulation to the delinquent filing is a statement that the returns were filed "upon notice from the Treasury Department." It is suggested that petitioner, being a foreign corporation without officers or place of business in the United States, may be considered thereby to have sufficient "reasonable cause" for failure to file. Whether these facts alone, unaccompanied by some supporting statement or evidence relating them to the failure to file, would ever be sufficient we need not now determine. Certainly none of the cases cited by petitioner go so far. *Fajardo Sugar Co. of Porto Rico*, 20 B. T. A. 980; *Hans Pederson*, 14 B. T. A. 1089; *Adelaide Park Land*, 25 B. T. A. 211; *Jockey Club*, 30 B. T. A. 670. But here all that is shown is that petitioner is a foreign corporation, and whether it has officers or a place of business within the United States is a matter outside of the record. We are unable to conclude that petitioner has even attempted to make any such showing of reasonable cause as is required to avoid imposition upon it of the 25 percent delinquency tax.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

[3] SEC. 291. FAILURE TO FILE RETURN. [Revenue Act of 1928.]

In case of any failure to make and file a return required by this title, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, 25 per centum of the tax shall be added to the tax, except that when a return is filed after such time and it is shown that the failure to file it was due to reasonable cause and not due to willful neglect no such addition shall be made to the tax. * * *