# AMERICAN SMELTING & REFINING CO. v. UNITED STATES.

## No. 7865.

Circuit Court of Appeals, Third Circuit.

Argued April 6, 1942.

Decided Sept. 28, 1942.

Floyd F. Toomey, of Washington, D. C. (Ellsworth C. Alvord, of Washington, D. C., on the brief), for appellant.

Michael H. Cardozo, IV., Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch, Sp. Asst. to Atty. Gen., and Charles M. Phillips, U. S. Atty., of Trenton, N. J., on the brief), for appellee.

Before BIGGS, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

The plaintiff taxpayer seeks in this action to recover back taxes paid and to recover what it claims is an overcharge in its income tax for the year 1925.[1] The taxpayer owned all of the common stock of a subsidiary company. That company had outstanding two issues of preferred stock, both cumulative, both with a par value of $100, one of which called for 6% per annum dividend, and the other 5%. To retire this stock the taxpayer offered its own 30 year, $100, 5% bonds in 1917. During that year and 1918 one share of the 6% stock was acquired by giving the shareholder a $100 5% bond plus a cash payment of $7.50; during 1921 and 1922, the exchange was on a par for par basis. The other shares were secured by the exchange of one share for one bond of the series described. The average sales price on the New York Stock Exchange of the 6% stock during the period of retirement fluctuated from a high of 100¼ to a low of 82½; that of the 5% stock from 101½ to 91½. The taxpayer, claiming that the bonds were issued at discount, seeks to amortize the claimed discount by annual deductions over the life of the bonds. The learned trial court decided the case adversely to the taxpayer[2] and it is here on appeal from that ruling.

Up to the threshold of the immediate question, the path is clear. While no lan-

[1] The then Collector no longer held office at the time suit was brought so the action is against the United States. 28 U.S.C.A. § 41(20).

[2] D.C.N.J.1941, 39 F.Supp. 334.

guage of the Revenue Acts has specifically covered the point, the Treasury Regulations provide that if bonds are issued by a corporation at a discount the net amount of such discount is deductible and is to be amortized over the life of the bonds.[3] The Supreme Court has said that both discount and commissions may thus be amortized. Helvering v. Union Pacific R. Co., 1934, 293 U.S. 282, 55 S.Ct. 165, 79 L.Ed. 363; Natural Gas Pipe Line Co. of America v. Commissioner of Internal Revenue, 1941, 45 B.T.A. 939. If the taxpayer had raised the money to buy in the outstanding preferred stock by selling its $100 30 year bonds at $90 it concededly would have been allowed to amortize the $10 discount at the rate of $.33⅓ per year.

The taxpayer contends that the same rule should be applied in this case where the exchange of the bonds for the preferred stock was made directly with the owner thereof instead of following the longer process of selling the bonds and buying the stock for cash. This contention the government denies. The question has not been squarely decided previously by court decision, although it seems to us that what authority there is seems to point in favor of the taxpayer's contention. The Fourth Circuit, evidently unimpressed by the defendant's argument here, refused to lay down any universal proposition "that where bonds are issued for property, a reasonably estimated discount may never be taken as an amortized deduction". But the facts in that case did not show to the court's satisfaction that the bonds had been issued under circumstances which were equivalent to a discount. Dodge Brothers, Inc., v. United States, 4 Cir., 1941, 118 F.2d 95, 103. The court having found that the securities offered could have easily been disposed on the market, without the inducement of the discount and that the plan was merely one for the realization of abnormally large profits by the underwriters, it concluded that the discount was not genuine in the sense of an inducement to the public to purchase that which it otherwise would not. No such showing was made here. Furthermore it was shown in the present litigation and not disputed by the government, that when the stock sold low on the market, the $7.50 additional bonus was withdrawn, thus indicating that the offer was not made more attractive than was necessary.[4] These factors, in addition to the significant proof of the current market prices of the stocks and bonds, are we think, sufficient to distinguish this case from the one in the Fourth Circuit.

The point has been raised in cases before the Board of Tax Appeals but the issue, as pointed out by the learned trial Judge here, was avoided on the ground of lack of proof with respect to the value of the property received by the taxpayer. Carding Gill, Ltd., v. Commissioner of Internal Revenue, 1938, 38 B.T.A. 669; Southern R. Co. v. Commissioner of Internal Revenue, 1933, 27 B.T.A. 673; New York, C. & St. L. R. Co. v. Commissioner of Internal Revenue, 1931, 23 B.T.A. 177; Kansas City S. R. Co. v. Commissioner of Internal Revenue, 1931, 22 B.T.A. 949.

In addition there is an Office Decision applying an earlier Regulation upon this point which was substantially the same as the one involved here. In that case the taxpayer, owner of an unincorporated business, had issued mortgage bonds, some of which were traded for liberty bonds, which had a market value of less than par

---

[3] Treas. Reg. 65, Art. 545(3) (a), Revenue Act of 1924. The same Regulations applied under former Acts: Treas. Reg. 62, Art. 545(3) (a), Revenue Act of 1921; Treas. Reg. 45, Art. 544(3) (a), Revenue Act of 1918; Treas. Reg. 33, Rev. Art. 150, Revenue Act of 1916, as amended by the Act of 1917. The current Regulation on this point is Treas. Reg. 103 § 19.22(a)-18(3) (a).

[4] It should be noted in this connection that $20,000 face amount of the taxpayer's bonds were issued in May, 1922 at a discount of 6.86% and that $7,500,000 face amount of these bonds were issued in November, 1922 at a discount of 8.50%. It will be observed from a study of the month by month sales of the Series A and Series B Preferred Stocks of the Securities Company and the prices at which the bonds of the taxpayer were sold during the same period, that the selling prices of the bonds bear a close relationship to the selling prices of the stocks and that the prices at which the bonds were sold in 1922 may be closely correlated to the discounts at which the bonds were actually issued. We think that this affords a very high degree of proof that the premium at which bonds were offered in exchange for the stock represented values expressed in terms of dollars and cents and not values arrived at because the taxpayer desired to dissolve the Securities Company.

but which were taken at their par value. It was held that when the exchange was made the taxpayer had in effect disposed of the bonds at a discount, the amount of which was represented by the difference of the par value of his bonds and the fair market value of the liberty bonds when taken in exchange. 1921, O.D. 959, 4 C.B. 129. The plaintiff here cites this ruling as authority for his position. Defendant answers that the ruling does not bind this court and in any event the liberty bonds had a far more stable value than the preferred stock in question. For whatever authority it has, however, the ruling does point in the direction the taxpayer asks us to go.

The government's argument is to the effect that it is only when the bonds are issued for cash that it is possible to tell whether the loss which the amortization anticipates will ever occur. If the taxpayer had the good fortune after buying this stock, it is suggested, to sell it at a price higher than that for which it took it in trade for bonds there would be no loss to be anticipated from the transaction. Where bonds are issued for cash, the argument runs, there is an immediate certainty that gain or loss will be realized in the future and this gain or loss a taxpayer, on the accrual basis, may take into account.

It seems to us that the government's argument overlooks what we believe is the rationale of the theory underlying the amortized deduction of discount. Ordinarily, bonds are issued at a discount because the promised rate of interest is, due to the condition of the prevailing market, too low to sell them at par. It would, therefore, seem that the discount allowed is in the nature of additional interest which accrues over the life of the bond and is payable at the maturity of the principal obligation. Accounting authorities so treat it.[5]

This is confirmed by the Treasury Regulations. Although, originally, they treated discount under the heading of "Losses", Treasury Regulation 33, Revised Article 150, subsequently, they treated it "in the same way as interest paid", Treasury Regulation 65, Article 563 and Treasury Regulation 62, Article 563.[6] This follows the language of the Revenue Acts which allow deductions of "losses" on "sales or exchanges" and of "interest" on "loans".[7] It is admitted that the issuance of bonds in return for stock or cash constitutes a loan.

We believe that the discount is still to be treated as additional interest when the subject matter of the loan is stock instead of cash. It is clear in both cases that the discount, or additional interest, is determined at the time the bonds are issued. Thus, when the investor is paid the face amount of the bond at maturity, he is taxable for the difference between that sum and the cost of the bond. Here the cost of the bond is the fair market value of the stock at the time the corporate obligations were exchanged.[8] To sustain the government's contention, in view of these considerations, would be to say, in effect, that, on the same loan, the taxable "interest" earned by the investor varies in amount and is computed as of a different time than the deductible "interest" paid by the obligor. We think that this not only distorts, unnecessarily, the ordinary incidents of a commercial transaction but also upsets the balance of the tax situation.[9]

■■■ We do not think, therefore, that the question whether amortization is per-

---

[5] Accountants' Handbook (2d Ed., 1932) 890–892; 2 Kester, Accounting Theory and Practice (1925) 199; Newlove, Smith and White, Intermediate Accounting (1939) 296; Paton, Advanced Accounting (1941) Ch. 27; Schmidt, Theory and Mechanics of Accounting (2d Ed. 1937) 314.

[6] Although Treas. Reg. 45, Art. 544(3) (a) provided that discount was deductible "as interest", the 1920 edition of the same Regulation omitted this reference to interest. Treas. Reg. 45, Art. 544(3) (a), (1920 Ed.). However it is again found in Regulations 62 and 65 cited above.

[7] See discussion of theory underlying deduction of discount in Mertens, Law of Federal Income Taxation (Supp. 1939) pp. 227, 228.

[8] 1920, O.D. 475, 2 C.B. 211.

[9] Under the taxpayer's view, the same sum represents the discount and is taxable to the bondholder and deductible by the obligor. If the stocks or bonds are sold, the basis is determined as of the same time and the gain, if any, is taxable. The only discordant note is that the investor may not amortize the discount. New York Life Insurance Co. v. Edwards, 1926, 271 U.S. 109, 46 S.Ct. 436, 70 L.Ed. 859; Corn Exchange Bank v. Commissioner of Internal Revenue, 1927, 6 B.T.A. 158. This has been severely criticized by accountants who prefer to amortize discount on the investor's

mitted is settled by making the dividing line between transactions in which bonds are issued for cash and transactions where bonds are issued for something else. We do see the possibilities of great difficulty in determining, with sufficient exactness, the difference between the par value of the bonds and the thing other than cash received for the bonds by the obligor. We think in this case the taxpayer has met that difficulty, except as to part of the 5% shares, discussed below. He has shown the selling price of part of the 5% and all the 6% preferred stock of the company whose shares the taxpayer took in for the bonds, and this by reference to the open market of the New York Stock Exchange. This is further checked by showing the selling price of the taxpayer's bonds in transactions shortly after, or during the time under consideration. It is proof, it seems to us, sufficient to establish the value of what was received in exchange for the bonds issued. It shows the stock, when received, was worth less than the par value of the bonds given for it and how much less. That seems to us to bring the taxpayer within the rule which permits the amortization of this discount under the rules stated by the Regulations and approved by the Supreme Court.

■ With regard to the portion of the 5% shares excepted above this proof is lacking, however. There is no showing of selling prices of these shares from September, 1917, through October, 1922, inclusive. In the absence of such proof, we do not know that the exchange of bonds for the 5% stock was required to be made at the discount claimed by the taxpayer, or any other discount. Despite the taxpayer's argument to the contrary, we think the burden was upon him to make this showing. With regard to the portion of the bonds covered by this exchange, therefore, we sustain the action of the trial court.

The judgment of the District Court is reversed and the case remanded for proceedings in accordance with this opinion.

JONES, Circuit Judge (dissenting).

Assuming that a discount may be determined from an issuance of bonds in exchange for goods and property other than money, it would, of course, still be incumbent upon the obligor, in order to render the discount determinate, to establish that the bonds were in fact issued for considerations worth less than the par value of the bonds. I am unable to see how, under the circumstances of this case, the market quotations on the shares of stock received by the taxpayer in exchange for its bonds can be taken as proof of the value of the bonds.

The obligor's acquisition of its wholly owned subsidiary's preferred stock by means of the bond exchange was in aid of the contemplated liquidation of the subsidiary which the parent desired to bring about and which was duly consummated. The book or liquidating value of the stock was the thing to be made available to the parent but not to the ordinary purchaser in the market. Moreover, the market prices of the stock, while outstanding, may well have been affected (as is frequently the case) by conditions wholly unrelated to the value of the stock, e. g., the extent of the market demand in relation to the supply available. Indeed, the importance of that fact in its effect upon the market for the stock may well have been an inducing cause for the parent's adoption of the medium of an exchange of its bonds for its subsidiary's preferred stock rather than a sale of its bonds for cash (thereby establishing their worth) and a purchase of the stock with the proceeds. Nor may the prices obtainable for the bonds be deemed to scale in the same direction as the prices for the stock. The inverse is more likely to be true. Ordinarily, when equities are high, liens are relatively low, and vice versa. Incidentally, the Class "A" preferred, for a share of which a $7.50 cash premium was originally offered in exchange, in addition to the parent's $100 bond, was a 6% stock, as against a 5% dividend rate on the Class "B" preferred, and, therefore, perhaps harder to dislodge,—peculiarly a consideration to the parent (the bond issuer) in furtherance of its plan to liquidate the subsidiary.

In my opinion the Commissioner was justified in refusing the taxpayer the right to amortize an alleged, but unproven, bond discount, wherefore, the judgment of the District Court should be affirmed.

books. Accountants' Handbook (2d Ed. 1932) pp. 339, 340. 2 Kester, Accounting Theory and Practice (2d Ed.1925) pp. 199–201; Newlove, Smith and White, Intermediate Accounting (1939) 205; Paton, Advanced Accounting (1941) 196.