The **MONTANA POWER COMPANY,**
v.
**UNITED STATES.**
No. 548-53.

United States Court of Claims.
March 5, 1958.

594

E. Roy Gilpin, New York City, for plaintiff.

Elizabeth B. Davis, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Washington, D. C., was on the brief.

MADDEN, Judge.

The plaintiff, The Montana Power Company sues for a refund of taxes. It says that when it paid off, in 1945, debentures which it had issued in 1936, it suffered a loss which it should have been, but was not, allowed to deduct from its taxable income in 1945.

In 1936, practically all of the plaintiff's stock was owned by American Power and Light Company, a public utility holding company, hereinafter called "American." At that time American also owned all the stock of Montana Power Gas Company, hereinafter called "Gas Company." In 1936, pursuant to a plan of reorganization of the corporate structures of these companies, the plaintiff acquired all the assets of Gas Company in return for 30-year 5% debentures of the plaintiff of the face value of $10,589,900. The cost of the assets to Gas Company had been $11,183,595.53, but their basis in Gas Company's hands had been reduced to $7,044,544.44 on account of depreciation and other allowable causes. The exchange of the assets by Gas Company to the plaintiff was tax free, because it was a step in the reorganization, although it seems to have involved a profit to Gas Company of $3,545,355.56. On the other hand, under the tax statutes, the assets had the same basis in the hands of the plaintiff which they had had in the hands of Gas Company, i. e. $7,044,544.44, so that the Government might later get a tax on the capital gain, if the plaintiff should later sell the Gas Company assets.

In 1937, American liquidated Gas Company, whose only asset was the $10,-589,900 of the plaintiff's debentures. Pursuant to section 112(b)(6) of the Revenue Act of 1936, 26 U.S.C.A. § 112 (b)(6), this transaction was tax free, and the basis of the debentures in the hands of American was the same as it had been in the hands of Gas Company, i. e. $7,044,544.44, the basis of the assets which Gas Company had exchanged for

the plaintiff's debentures. American, in 1945, sold the debentures to banks for $10,645,724.02. In its tax return for 1945, American reported that sale, said that the debentures had a cost or other basis of zero but that the amount received was an "amount excluded from gross income under Section 371(b) of the Internal Revenue Code."

The plaintiff, on November 26, 1945, retired the $10,589,900 face amount of these debentures by paying that amount of cash to the banks, which were then the holders of the debentures.

The plaintiff, having issued the debentures here involved in 1936, and having received in return assets having a basis much less than the face amount of the debentures, conceived that it was in the tax position of a corporation which had issued bonds at a discount. Pursuant to Treasury Regulations,[1] and apparently without any express statutory sanction, such a corporation is allowed to treat the amount of the discount as if it were interest, divide it by the number of years of life of the bonds, and deduct, in each year, the proper fractional part of it as interest paid in that year. The plaintiff, asserting that it had issued its 30-year debentures at a discount of $3,545,355.-56, claimed discount expense of the proper fractional amounts of that sum for the years 1940 and 1941 and sued in the United States District Court for the District of New Jersey for a refund of taxes on that account. The District Court held that, since the plaintiff had not shown that Gas Company's assets were worth less than the $10,589,900 which the plaintiff paid for them in 1936 by issuing its debentures, there was no basis for a decision that the debentures had been issued at a discount. Montana Power Company v. United States, D.C., 121 F.Supp. 577, affirmed 3 Cir., 232 F.2d 541, certiorari denied 352 U.S. 843, 77 S.Ct. 51, 1 L.Ed.2d 59.

The Government urges, not very vigorously, that these decisions create a collateral estoppel against the plaintiff which requires the dismissal of its present suit. The plaintiff, both in that suit and the instant one, takes the position that the actual value of the Gas Company assets in 1936 is irrelevant, and in neither suit did it present any evidence of that value. There was, therefore, no decision in the other suit as to the fact of value. As to the legal question, the District Court did decide that the legally imposed tax basis of the assets which the plaintiff received for its debentures was not the measure by which it would be determined whether the debentures were issued at a discount.

In the instant case we may have a comparable problem, that is, whether for another tax purpose relating to these debentures, the artificial, legally imposed tax basis of the assets, rather than their actual value, should be controlling. Our impression is that the doctrine of collateral estoppel is not applicable, but, as will appear hereinafter, we decide the case on other grounds.

The ground of the plaintiff's instant suit is that it paid out, in 1945, $10,589,-900 to redeem debentures for which it had received, in 1936, property worth only $7,044,544.44 for income tax purposes, no matter how much the property may have been worth for operating, sale, or other purposes.

We lay aside, for the moment, the discrepancy between the tax basis figure and the actual value figure. If one buys something and pays more than it is worth, and more than he can resell it for, there are no immediate tax consequences of this everyday occurrence. If, instead of paying cash, he promises to pay after a period of years, he may regret his bad bargain more, but when he pays, there are still no tax consequences. He must "realize" his bad bargain, his loss, by selling. Likewise when he makes a good bargain and gets something worth more than he pays or promises to pay for it, he is not taxed upon his good fortune until he realizes his gain by selling.

---

1. Section 19.22(a)–18 of Treasury Regulations 103.

If the tax gatherers did base taxes and deductions upon financial statements showing taxpayer's net worth on specified tax days, it would seem that the plaintiff's net worth, assuming still that it obligated itself in 1936 to pay $10,589,-900 for property worth only $7,044,544.-44, was impaired in 1936, and not in 1945. Its 1936 financial statement would show the large liability and the small sum in the assets column. We have difficulty, then, in relating the plaintiff's alleged diminished net worth to the year 1945, even if we assume that diminished net worth is relevant for income tax purposes.

The plaintiff's contention that net worth is relevant for income tax purposes is based upon the Supreme Court's decision in United States v. Kirby Lumber Co., 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131. In that case the taxpayer corporation purchased some of its outstanding bonds for less than their face value and for less than the amount which it had received for them when they were issued. The Court held that the difference was taxable income. The corporation had, obviously, made a profit. It had, we will say, received $100 for the bonds and bought them back for $90. From the tax gatherer's standpoint, it was now or never, so far as collecting a tax on that profit was concerned. The profit was "realized" as far as it ever could be realized, since there was nothing left to sell. The reacquired bonds would go to the incinerator; the $10 was in the asset column of the corporation's account. The Supreme Court said, in Kirby Lumber, 284 U.S. at page 3, 52 S.Ct. at page 4:

"As a result of its dealings it made available $137,521.30 assets previously offset by the obligation of bonds now extinct."

If a corporation issues its bonds for $90 and buys them back for $100, it has suffered a loss, and in this case the taxpayer's only chance to get a tax benefit from that loss is then and there, because he has nothing to sell in the future to "realize" the loss. The tax benefit has been allowed in such cases. American Gas & Electric Co. v. United States, 17 F.Supp. 151, 84 Ct.Cl. 92, 108, 109.

We think that the doctrine of Kirby Lumber and its counterpart arises out of the necessity of the type of transaction there involved, i. e. transactions where there has been, in fact, a gain or a loss, but there will be no later opportunity to apply the usual rules of "realization." We think that, except in such cases, net worth is irrelevant for income tax purposes, and both the tax gatherer and the taxpayer must wait until gains or losses are realized in the normal way. If this is true, the plaintiff, even though it had in fact, and not only on an artificial tax basis assumption, got less than its money's worth when it promised to pay, and when it ultimately paid, for Gas Company's assets, would not have a tax deductible loss, since it still had, in 1945, the assets which it bought from Gas Company in 1936.

We have considered the contrary position on this question taken by the Court of Appeals for the Third Circuit in American Smelting & Refining Co. v. United States, 130 F.2d 883, but we find ourselves unable to agree with it.

If the plaintiff had resold the assets received from Gas Company in 1936, it would have been saddled with the low cost basis which it had inherited from Gas Company in 1936. This would have increased its gain or diminished its possible tax deductible loss on the resale. We think we may assume that there is some fair and rational basis for making these reorganization transactions tax free, and that the burden of taking the transferor's basis is adequately compensated by corresponding advantages.

The plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE and LITTLETON, Judges, concur.

WHITAKER, Judge, took no part in the consideration and decision of this case.