BANCO DE PONCE, Plaintiff and Petitioner, *v.* SECRETARY OF THE TREASURY, Defendant and Respondent.

No. 11650. Submitted April 3, 1959.—Decided June 5, 1959.

---

*Luis E. Dubón* and *R. García Cintrón* for petitioner. *Hiram R. Cancio, Secretary of Justice (José Trías Monge, former Secretary of Justice, on the brief), and Manuel J. Medina Aymat, Assistant Attorney General, for respondent.*

MR. JUSTICE SERRANO GEYLS delivered the opinion of the Court.

There is no controversy as to the facts in this case. During the years 1945, 1946, 1947, 1948 and 1949, the Banco de Ponce purchased bonds of the federal government of the United States to use them as collateral security for deposit of public funds. When it acquired them it had to pay certain amounts by way of premium. In the years 1948 and 1949 the bank had to sell those bonds and in 1948 lost the sum of $142,139.15 and in 1949, $22,779.75, both from the amount of the premium. In its income tax returns for those years, the banking corporation deducted said amounts from its gross income. The Secretary of the Treasury disallowed those deductions and informed the bank of the corresponding deficiencies. The taxpayer challenged those deficiencies before the Superior Court and the latter, after the proper proceedings, entered judgment in favor of the Secretary.

On appeal the bank maintains that the afore-mentioned amounts are deductible from its gross income, either as a "loss," pursuant to § 32 (*a*) (4) of the Income Tax Act of 1924—13 L.P.R.A. § 735 (4)—or in the alternative, as "de-

preciation or amortization" of the premium paid, pursuant to the provisions of § 32(a)(6) of said Act—13 L.P.R.A. § 735(6).

 Section 32(a)(4) provided, as originally drafted, that in computing the net income of a corporation there would be allowed as deductions: "Losses sustained during the taxable year and not compensated for by insurance or otherwise. No deduction shall be allowed under this paragraph for any loss claimed to have been sustained in any sale or other disposition of shares of stock or securities where it appears that within thirty days before or after the date of such sale or other disposition the taxpayer has acquired (otherwise than by bequest or inheritance) or has entered into a contract or option to acquire substantially identical property, and the property so acquired is held by the taxpayer for any period after such sale or other disposition, unless such claim is made by a dealer in stock or securities and with respect to a transaction made in the ordinary course of its business. If such acquisition or the contract or option to acquire is to the extent of part only of substantially identical property, then only a proportionate part of the loss shall be disallowed. The basis for determining the amount of the deduction for losses sustained shall be the same as is provided in section 7 for determining the gain or loss from the sale or other disposition of property." (Act of 1925, Sess. Laws, p. 478.)

Upon amending that section in 1941 the first two sentences, particularly relevant in this case, were thus drafted: "Losses sustained during the taxable year and not compensated for by insurance or otherwise. No deduction shall be allowed under this paragraph for any loss claimed to have been sustained in any sale or other disposition of shares of stock or securities, except such losses as may compensate the profits obtained during the taxable year as a result of the

sale or other disposition of shares or securities." (Act of 1941, Sess. Laws, p. 520.)

The petitioner does not deny, nor is it in a position to deny, that the phrase "shares of stock or securities," used in the latter sections, includes the bonds acquired by it. *González* v. *Wys*, 34 P.R.R. 397, 399 (1925) ; *Commissioner of Internal Revenue* v. *Neustadt's Trust*, 131 F.2d 528, 529 (2d Cir., 1942) ; *Commissioner of Internal Revenue* v. *Newberry L. & C. Co.*, 94 F.2d 447 (6th Cir., 1938) ; *Commissioner of Internal Revenue* v. *Kitselman*, 89 F.2d 458, 460 (7th Cir., 1937) ; *Lilienthal* v. *Commissioner of Internal Revenue*, 80 F.2d 411, 413 (9th Cir., 1935) ; 3 Mertens, *The Law of Federal Income Taxation* (Rev. ed. Zimet and Weiss), 239, § 20.67; 5 Mertens, *op. cit.* at 205 § 2860, footnote 58. It refers us, however, to § 16 (*a*) (4), applicable to individuals, and points out that the latter should be examined jointly with § 32 (*a*) (4) in order to thus obtain a correct interpretation of the afore-cited phrase.

In its original version § 16 (*a*) (4) allowed individuals a deduction for "losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any trade or business." (Act of 1925, p. 440.) Paragraph (5) of that same section also allowed individuals to deduct from their gross income non-compensated losses incurred "in any transaction entered into for profit, though not connected with the trade or business." And it added: "No deduction shall be allowed under this paragraph for any loss claimed to have been sustained in any sale or other disposition of shares of stock or securities where it appears that within thirty days before or after the date of such sale or other disposition the taxpayer has acquired (otherwise than by bequest or inheritance) or has entered into a contract or option to acquire substantially identical property, and the property so acquired is held by the taxpayer for any period after such sale or other disposition." (Act of 1925, p.440.)

In 1941, and by the same Act that amended § 32 (a) (4), the Legislature enacted the following new version of § 16 (a) (4) and (5) : (4) "Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any trade or business. The losses under this paragraph and paragraphs (5) and (6) of this section shall be deducted only during the taxable year when they have been really sustained. Losses shall not be deductible under this paragraph or under paragraphs (5) and (6) of this section if they are sustained through sales or exchanges of property, directly or indirectly (a) between members of the same family or (b) with the exception of distribution made at liquidation, between an individual and a corporation with respect to which the individual is the direct or indirect owner of more than fifty (50) per cent of the value of the outstanding stock, or (c) with the exception of distribution made at liquidations, between two corporations with respect to which one same individual or corporation is the direct or indirect owner of more than fifty (50) per cent of the value of the outstanding stock of each said corporation, or (d) are two corporations one of which is the direct or indirect owner of more than fifty (50) per cent of the value of the outstanding stock of the other corporation. For the purposes of this paragraph an individual shall be considered as owner of the shares which belong directly or indirectly to his family; and by family shall be understood, for the purposes of this paragraph, the relative up to the fourth degree of consanguinity or affinity. Losses sustained through sales or exchanges of shares, bonds, or securities shall not be deductible under this paragraph or under paragraphs (5) and (6) of this section, except those losses which offset the earnings obtained during the taxable year as a result of such sales or exchanges.

(5) "Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered for profit, though not connected

with the trade or business; but in the case of a nonresident individual not a citizen of Puerto Rico, only if the profit, if such transaction has resulted in a profit, would be taxable under this title. No deduction shall be allowed under this paragraph for any loss claimed to have been sustained in any sale or other disposition of shares of stock or securities where it appears that within thirty days before or after the date of such sale or other disposition the taxpayer has acquired (otherwise than by bequest or inheritance) or has entered into a contract or option to acquire substantially identical property, and the property so acquired is held by the taxpayer for any period after such sale or other disposition. If such acquisition, or the contract or option to acquire, is to the extent of only part of substantially identical property, then only a proportionate part of the loss shall be disallowed." (Act of 1941, pp. 498 and 500.)

The petitioner compares the texts of §§ 16(a)(4) and 32(a)(4) as approved in 1941 and observes that the former regulates the deduction by *individuals* of losses sustained in any sale or other disposition of "shares, bonds, or securities" while the latter regulates[1] the deduction by *corporations* of losses sustained in any sale or other disposition of "shares of stock or securities." It maintains that in mentioning specifically the word "bonds" in one and not in the other, the lawmaker made evident his purpose of excluding such "bonds" from the regulations applicable to corporations. Petitioner quotes the well-known principle that the use of different language in diverse sections of the same Act indicates that it is used for different purposes, and also asks us to use the rule, applicable to tax laws, of deciding the

---

[1] Petitioner tells us that the Act "prohibits" those deductions. As may be noted from a reading of the above-transcribed sections the Act permits a deduction of losses limited to the amount of the earnings obtained during the year in similar operations. Arabía, *Manual de Contribución Sobre Ingresos* 226, § 16.6 (1948).

doubts in favor of the taxpayer. It relies mainly on *Community of the Heirs of Fajardo v. Tax Court*, 73 P.R.R. 499 (1952).

A brief reflection on the problem will show that the petitioner expects too much. In the first place, he does not give, nor have we been able to find, any reason in law, economics or administration explaining such privilege in favor of corporations. It was never set forth in the local Acts prior and subsequent to 1941 nor in the federal legislation, which as it is known, serves as model to ours. Secondly, in § 16 (a) (5), applicable also to individuals, and also amended in 1941, the lawmaker used the phrase "shares of stock or securities" in prohibiting the deduction for losses in wash sales. Should we accept petitioner's interpretation, with more reason in this case, the bonds would have to be excluded from the effects of that prohibition, even when there is no reason whatever to do so, nor have they ever been excluded from neither our legislation nor the federal one. 5 Mertens, *op. cit. supra* at 203–11, § 28.60–28.61; Henderson, Introduction to Income Taxation 221 (1943). Third, the same position would have to be taken as to paragraph (a) (2) of § 16, also included in the 1941 Act, which allows a deduction for interest paid or accrued on indebtedness, "except on indebtedness incurred, or continued, to purchase or carry obligations title or securities . . . the interest upon which is wholly exempt from taxation" and which, as may be seen, does not expressly mention "bonds." We know, however, that the bonds are included in the general phrase. 4 Mertens, *op. cit.* at 58–60, § 26.13. Fourth, insofar as § § 16 (a) (4) and 16 (a) (5) are concerned, as well as § 32 (a) (4) the Act expressly provides that "the basis for determining the amount of deduction . . . shall be the same as is provided in Section 7 for determining the gain or loss from the sale or other disposition of property." 13 L.P.R.A. § 695 (6); 13 L.P.R.A. § 735 (4). However, that § 7,

which was not amended in 1941, uses the phrase "stock or securities" in several places [2] and never mentions the word "bonds." If we followed petitioner's logic we would have to assume that the lawmaker acted speciously in allowing an individual under § 16 (a) (4) to deduct a loss sustained from a sale or exchange of "bonds," in order to offset "the earnings obtained during the taxable year as a result of such sales or exchanges," and in not providing in § 7, by saying only "stock or securities" and not expressly "bonds," the necessary standards for fixing the basis for deduction. Finally, the bank's position, going to its logical extreme, would force us to exclude the "bonds" from the numerous provisions of the 1924 Act which use the phrase "stock or securities" or similar terms,[3] without considering in each case other factors determining its inclusion or exclusion.

We have no doubt whatever that the specific mention of the word "bonds" in § 16 (a) (4), interpolated in 1941, cannot have the effect sought by the petitioner neither on §32 (a) (4) nor on any other section of the Act.[4] It is merely an addition by way of emphasis, prompted perhaps by the more frequent purchases of bonds by individuals at the beginning of the past decade. We cannot interpret the laws only through the mechanical application of the very stale canons of construction. The latter are no other than "generalization of experience," Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Columbia L. Rev., 527, 544

---

[2] 13 L.P.R.A. § 665, pars. 6, 7, 8, 9, 10 and especially 11.

[3] See 13 L.P.R.A. § § 662, 664, 665, 694, 695, 701 and 745.

[4] In *Community of the Heirs of Fajardo* v. *Tax Court*, 73 P.R.R. 499 (1952) cited by the petitioner, we decided that § 32 (a) (2) of the Act did not prohibit the deductions of interest paid by a *sociedad* to a corporation. We indicated that the first part of that section allowed the deductions of interest without any restriction whatever and that the *Provided* clause that followed, added in 1941, did not in terms prohibit deductions of interest paid by a *sociedad* to a corporation. We added that even in the case of an oversight it was not a judicial function to supply the omissions. The difference between both situations are clear. The case of *Community of Fajardo* involved a deduction which prior to the 1941 amendment was freely allowed, which following that amendment

(1947) and, as such, subject in their application to the limitations that each concrete situation provides. Besides, it is possible in practically all cases to set up one formula against another. Thus, for example, in the case at bar, we could set up the afore-cited maxim with respect to the effect of the use of different words in different sections of an Act against the maxim which orders that words used by the lawmaker shall be given their ordinary meaning; and against the canon of construction favorable to the taxpayer, that which provideds that deductions shall be construed restrictively, because they constitute a privilege and are the product of legislative generosity. We cannot engage in this futile contest between superficialities, and much less use it as a substitute of what should be the genuine function of judges in the interpretation of laws: the process of patient and rigorous examination which begins with the letter of the law and evaluates all the elements of judgment that are at hand to ascertain the real meaning and purpose of the legal provision. We decide, in view of the foregoing, that the phrase "shares of stock or securities" as used in § 32 (a) (4) of the Act includes the word "bonds."

As alternative ground for its motion for reversal of the judgment on review, the bank maintains that the Superior Court erred in denying it the right to deduct the premium by way of depreciation or amortization which, in its opinion, is allowed by § 32 (a) (6) of the Act. In its pertinent part the

---

was still allowed but subject to specific restrictions, and the Court was requested to insert an additional restriction. The controversy at bar involves a restriction, applicable to corporations, for the deduction of losses in the sale or exchange of "shares of stock or securities," which prior to 1941 was considered as including "bonds," but which after that date it allegedly does not include them because another section, applicable to individuals, mentions "bonds" specifically. The question in this case is not to add one more restriction to the specific language of an Act but to determine the juridical scope of the phrase "shares of stock or securities" in the light of all the factors present and not of the only one which the petitioner deems pertinent.

latter allows a corporation the right to deduct from its gross income "a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence." The appellant invokes, furthermore, § 130 of Income Tax Regulations No. 1 of the Treasury Department which deal with the depreciation of "intangible" property.[5] It accepts that neither the 1924 Act nor its Regulations provides the method to be used to determine the amount of depreciation in these cases, but suggests that we adopt what it calls "the straight-line method" which in 1942 was incorporated in § 125 of the Federal Internal Revenue Code and later in § 125 of our Income Tax Act of 1954.

As is known, the provisions of the law and regulations of Puerto Rico were taken from the Federal Act and Regulations of 1924. The afore-mentioned provisions on depreciation are identical to those of the Federal Act of 1921. Since 1913 the uniform interpretation of the pertinent provisions of the Federal Act has always been contrary to that which is proposed to us today, until in 1942 Congress expressly legislated in the opposite sense. The situation is thus explained in the work of Mertens: "Prior to 1942 the payment of a bond premium was in every case considered as giving rise to a capital loss which was deemed to have been sustained by the owner of the bond, not on the payment of the premium but on the later disposition of the bond or at its maturity. Furthermore, all periodic payments on the bond at the

---

[5] *"Depreciation of Intangible Property.*—Intangibles, the use of which in the trade or business is definitely limited in duration, may be the subject of a depreciation allowance. Examples are patents and copyrights, licenses, and franchises. Intangibles, the use of which in the business or trade is not so limited, will not usually be a proper subject of such an allowance. If, however, an intangible asset acquired through capital outlay is known from experience to be of value in the business for only a limited period, the length of which can be estimated from experience with reasonable certainty, such intangible asset may be the subject of a depreciation allowance, provided the facts are fully shown in the return or prior thereto to the satisfaction of the Treasurer."

normal or coupon rate were includible in gross income as interest. That tax practice continued for nearly 30 years even though sound accounting practice required amortization of the bond premium. Eventually Congress became impressed with the realization that such incongruity should be avoided and that there was unjustifiable tax discrimination in favor of tax-exempt bonds as against holders of taxable bonds. In the 1942 Act Congress introduced a new technique in the income tax treatment of bond premium by providing for amortization of [that] bond premium." 4 Mertens, *op. cit.* 269, § 23.162.

Federal practice was based on good reasons. In *New York Life Insurance Co.* v. *Edwards*, 271 U.S. 109, 116 (1926), decided pursuant to the provisions of the 1913 Act, the Federal Supreme Court said:

"The Company owned many bonds, etc., payable at future dates, purchased at prices above their par values, and to amortize these premiums a fund was set up. It claimed that an addition to this fund should be deducted from gross receipts. The District Court thought the claim well founded, but the Circuit Court of Appeals took another view. Unless the addition amounted to a loss 'actually sustained within the year' no deduction could be made therefor. Obviously, no actual ascertainable loss had occurred. All of the securities might have been sold thereafter above cost. The result of the venture could not be known until they were either sold or paid off."

In *Corn Exchange Bank* v. *Commissioner*, 6 B.T.A. 158 (1927) the Federal Board of Appeals also considered a situation in which the taxpayer had established a system of annual amortization of premium.

" . . . The interest received from such bonds is not, in fact, diminished by annual charges made for the purpose of amortizing this premium. The fact that the petitioner may consider a part of this interest as set aside annually for the purpose of amortizing the premium does not diminish the actual interest received or accrued on the bonds. Nor does the setting aside

of an annual amount for this purpose constitute a realized loss on the bonds as the court has pointed out in *New York Life Insurance Co.* v. *Edwards.*

"The same consideration governs in determining the proper basis to be employed in computing gain or loss on the sale of the bonds under the 1921 Act as under the 1913 Act. The basis prescribed by the statute for computing gain or loss is cost . . . This basis can not be changed because of any supposed appreciation or diminution in value not previously allowed. Unlike depreciation, the annual amortization of premium or discount on securities of other corporations held for investment is not an allowable adjustment to income, nor an allowable adjustment to the basis for computing gain or loss on sale . . . A method of accounting which reflects purely theoretical increases or decreases in income not realized, as we believe the method contended for by petitioner does, cannot correctly reflect income as contemplated by the statute." (pp. 162–63.) See, also, *Fink* v. *Northwestern Mutual Life Ins. Co.*, 267 Fed. 968, 971–72 (1920).

Although this interpretation has been criticized,[6] we noted that it remained in force for thirty years in the federal jurisdiction and until Congress provided a detailed set of regulations on amortization of bonds in the 1942 Act. We likewise observed that neither our 1924 Act nor its Regulations included a method for determining the amortization of bonds,[7] while in both there are specific provisions as to the manner of computing the gain or loss in the sale of stocks and securities. It is significant, also, that our lawmakers waited twelve years, after the change was made in the Federal Act, to enforce it in our country. Actually what the taxpayer asks us in this case is that we incorporate into our 1924 Act by way of interpretation the long and detailed regulations on amortization of bonds that the lawmakers of

---

[6] 8 Mertens, *op. cit.* at 147–50, § 44.40.

[7] Significantly, § 260 of Income Tax Regulations No. 1 allows, under certain circumstances, the amortization of premium and the discounts of bonds *issued* by a corporation.

the country adopted in 1954 [8] and which has been recently complemented by numerous provisions of the corresponding

---

[8] "§ 3125. *Amortizable bond premium*

(a) *General Rule.*—In the case of any bond, as defined in subsection (d), the following rules shall apply to the amortizable bond premium, determined under subsection (b), on the bond for any taxable year beginning after December 31, 1953:

(1) *Interest taxable.*—In the case of a bond, other than a bond the interest on which is excludible from gross income, the amount of the amortizable bond premium for the taxable year shall be allowed as a deduction.

(2) *Interest tax-exempt.*—In the case of any bond the interest on which is excludible from gross income, no deduction shall be allowed for the amortizable bond premium for the taxable year. The adjustment to basis on account of amortizable bond premium shall be as provided in section 3113 (b) (1) (H) of this title.

(b) *Amortizable Bond Premium.*—

(1) *Amount of bond premium.*—For the purposes of paragraph (2), the amount of bond premium, in the case of the holder of any bond, shall be determined with reference to the amount of the basis, for determining loss on sale or exchange, of such bond, and with reference to the amount payable on maturity or on earlier call date, with adjustments proper to reflect unamortized bond premium with respect to the bond, for the period prior to the date as of which subsection (a) becomes applicable with respect to the taxpayer with respect to such bond.

(2) *Amount amortizable.*—The amortizable bond premium of the taxable year shall be the amount of the bond premium attributable to such year.

(3) *Method of determination.*—The determinations required under paragraphs (1) and (2) shall be made—

(A) in accordance with the method of amortizing bond premium regularly employed by the holder of the bond, if such method is reasonable;

(B) in all other cases, in accordance with regulations prescribing reasonable methods of amortizing bond premium, prescribed by the Secretary.

(c) *Election of Taxable Bonds.*—

(1) *Eligibility to elect and bonds with respect to which election permitted.*—This section shall apply to any taxpayer with respect to bonds the interest on which is not excludible from gross income, but only if the taxpayer has elected to have this section apply.

(2) *Manner and effect of election.*—The election authorized under this subsection shall be made in accordance with such regulations as the Secretary shall prescribe. If such election is made with respect to any bond, described in paragraph (1), of the taxpayer, it shall also apply to all such bonds held by the taxpayer at the beginning of the first taxable year to which the election applies and to all such bonds thereafter acquired by him and shall be binding for all sub-

Regulations.[9] Such procedure cannot be justified, even accepting the most liberal view of our interpretative powers. All the foregoing convinces us that we should adopt the federal doctrine [10] prior to 1942.

The judgment will be affirmed.

Mr. Justice Santana Becerra did not participate herein.

sequent taxable years with respect to all such bonds, of the taxpayer, unless, upon application by the taxpayer, the Secretary permits him, subject to such conditions as the Secretary deems necessary, to revoke such election.

(d) *Definition of Bond.*—As used in this section, the term 'bond' means any bond, debenture, note, or certificate or other evidence of indebtedness, issued by any corporation and bearing interest, including any like obligation issued by a government or political subdivision thereof, with interest coupons or in registered form, but does not include any such obligation which constitutes stock in trade of the taxpayer or any such obligation of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or any such obligation held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business."

[9] Regulations Concerning the Income Tax Act of 1954 pp. 524–534 (1958).

[10] We realize that the taxpayer's position under the provisions of the 1941 Act is difficult because he can only deduct the losses from the sale of bonds from the "profits obtained during the taxable year as a result of the sale or other disposition of shares or securities." In the Federal Acts of 1924 to 1942—except the years 1932–34 in which there was a regulation in part similar to ours, 5 Mertens, *op. cit.* at 295–98, § 28.86—the losses of gross income subject to the limitation on wash sales could be deducted. There can be no doubt, however, as to the powers of our Legislature to establish the above-described standard—*Neuberger* v. *Commissioner*, 104 F.2d 649, 650 (2nd Cir. 1939) cert. den. 308 U.S. 623 (1939), 310 U.S. 655 (1940)—which, as we have indicated, remained in effect until 1954.